Ruth LESHORE, etc., Plaintiff,
Appellant,

v.

COUNTY OF WORCESTER, et
al., Defendants, Appellees.

No. 90–1396.

United States Court of Appeals,
First Circuit.

Heard Sept. 3, 1991.

Decided Oct. 1, 1991.

---

Harold I. Resnic, Springfield, Mass., for
plaintiff, appellant.

Edward F. O'Brien, Jr., Falmouth, for
appellees John M. Flynn, etc.

Hugh B. O'Malley, Worcester, for defendants, appellee County of Worcester.

Before CAMPBELL and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The appellant's son, Jimmy Leshore, committed suicide while awaiting trial in the Worcester House of Correction, Worcester, Massachusetts. The appellant, Ruth Leshore, brought this action in the district court under 42 U.S.C. § 1983 against the County of Worcester, the county sheriff and a county correctional officer, alleging that her son's suicide had been caused by the deliberate indifference of the defendants. After a jury trial, a verdict was returned for the defendants. Ms. Leshore then appealed, contending that the district court erred in removing a default judgment entered against the county early in the case when the latter failed to file a timely answer, and that the court's instructions to the jury were in error. We affirm.

Appellant's original complaint against the two individual defendants, filed on July 25, 1988, was amended to name the county as a defendant on February 27, 1989. The county was served on May 18, 1989, but did not answer. On October 19, 1989, trial was set for March 12, 1990. On October 31, 1989, a notice of default was issued against the county, and, on February 7, 1990, Ms. Leshore moved for a default judgment against the county. The county responded by moving to remove the default and file a late answer. The county's motion was signed by attorney Edward F. O'Brien, the attorney for the individual defendants, and alleged that O'Brien "has entered a Special Appearance [on behalf of the county] due to illness of County Attorney, Hugh B. O'Malley, and until such time as Attorney O'Malley enters his appearance."[1] The plaintiff opposed the county's motion and filed a memorandum of law alleging that she would be prejudiced by the removal of the default because she would not have

sufficient time left to conduct discovery against the county, and that the county attorney's illness was not a sufficient justification for the delay. On March 1 the court, without conducting a hearing, removed the default and allowed the county's motion to file a late answer. Trial proceeded as originally scheduled on March 12.

■ Rule 55(c) of the Federal Rules of Civil Procedure permits a court to set aside the entry of a default "[f]or good cause shown." Our recent opinion in *Coon v. Grenier*, 867 F.2d 73 (1st Cir.1989), summarized the standard of appellate review and the factors that should be considered in deciding a Rule 55(c) motion. A district court's action on a motion to set aside a default lies within the court's sound discretion and should be overturned only for abuse of that discretion. *Id.* at 75 and 78. Although there is no rigid formula to guide the court in ruling on such a motion, it should consider " 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.' " *Id.* at 76 (quoting *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985)). Furthermore, although Rule 55(c) permits the removal of both an entry of default and a default judgment, the standard for the former, at issue here, is more liberal. *Coon*, 867 F.2d at 76. Thus, the "philosophy that actions should ordinarily be resolved on their merits" dictates that "a district court should resolve doubts in favor of a party seeking relief from the entry of a default." *Id.* (citations omitted).

■ Given these considerations, we cannot say that the district court abused its discretion in removing the default. The court was told that the failure to respond was due to the illness of the county's attorney, and the court accepted that justification. *See Vac–Air, Inc. v. John Mohr & Sons, Inc.*, 471 F.2d 231 (7th Cir.1973); *Rooks v. American Brass Co.*, 263 F.2d 166 (6th Cir.1959) (both cases accepting ill-

---

1. At oral argument before this court, Mr. O'Malley represented that he is a sole practitioner who handles all of the county's legal work.

ness as a reason to remove a default under the higher standard applicable to default judgments). This is not the kind of judgment call an appellate court should normally second-guess. Furthermore, we fail to see how the plaintiff could have been prejudiced by the county's late answer. Although she argues that the short time (two weeks) between the removal of the default and the trial precluded discovery against the county, Ms. Leshore never moved to continue the case in order to conduct discovery. We note, moreover, that plaintiff had already deposed several county officials in preparing her case against the individual defendants, who were themselves county officers. Of course, one can only conduct discovery against a county by deposing or submitting interrogatories to its representatives, and the plaintiff has not identified any witnesses from whom she would have sought discovery in her case against the county who were not otherwise deposed. Although her claim against the county would have required proof of an "official policy" not necessarily required for her claim against the two individuals, *see Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the record reflects that the jail's policy concerning suicide risks was covered exhaustively by the plaintiff at trial.

We hold, therefore, that the district court did not abuse its discretion in removing the default.[2]

We next consider appellant's contention that the jury instructions were in error. Jimmy Leshore was sent to the Worcester House of Correction on June 12, 1986 to be held pending trial. Upon his arrival, a nurse determined that he was taking antipsychotic medication, and so reported to the Forensic Mental Health Team (the "Team"). The exact status of the Team was not fully developed at trial, but it appears to have been an entity separate from the county which, under contract with the Commonwealth of Massachusetts, Department of Mental Health, assisted the jail in dealing with suicide risks. The Team assigned a case worker, Patricia Neal Roy, to Mr. Leshore. Ms. Roy had a bachelor's degree in social work but had not taken any psychiatry courses. Ms. Roy had several conversations with Mr. Leshore, at which Mr. Leshore stated that his nerves were "pretty bad" and that he might kill himself if sentenced to jail. As a result of these conversations, on July 2, the day before a court appearance, Ms. Roy placed Mr. Leshore on suicide watch, which meant that he was placed in a special cell and constantly observed.[3] When Mr. Leshore's court appearance resulted in his case being continued for several months, he informed Ms. Roy that he would like to interact more with other prisoners, that he had come to grips with the possibility of jail time, and that he was no longer contemplating suicide. As a result, on July 7, apparently without consulting the Team's psychiatrist assigned to the jail, Ms. Roy took Mr. Leshore off suicide watch. Mr. Leshore was then placed alone in a cell designed for the general population of pretrial detainees. During the night of July 11–12, Mr. Leshore committed suicide by hanging himself with a bedsheet.

■ Appellant alleges error in two portions of the jury instructions. First, the court instructed the jury to answer the question

[w]as Mr. Leshore in need of psychiatric care, particularly on July 11 and 12th? And did he exhibit in some way such

---

**2.** The record does not reflect whether the district court considered the third factor noted in *Coon*, the merits of the defense. No affidavits concerning its defense were presented by the county, but the two individuals had answered the complaint. Thus, to the extent that the county's defense was reflected in the other defendants' answer, that defense was of record when the court ruled on the motion. The jury's verdict in favor of defendants, of course, suggests that the defense was meritorious.

**3.** It is not clear from the trial testimony whether he was placed on "A" or "B" watch. "A" watch is the higher form of alert, but the only significant difference between the two watches appears to be that "A" watch inmates are stripped of their clothes, which could be used by the inmates to hurt themselves.

need for psychiatric care? Note that there is no evidence in the case to support the assertion that once a person is determined to be suicidal, that that person remains forever after suicidal.

Appellant argues that Mr. Leshore's manifestations of his symptoms before July 7 were sufficient to put the defendants on notice that he was a suicide risk. Therefore, the "particularly on July 11 and 12th" instruction was error because it ruled as a matter of law that those earlier manifestations were not sufficient for a finding of such notice, a matter that should have been left to the jury. Appellant further argues that this problem was compounded by the judge's comment concerning the lack of evidence that a suicidal person remains forever suicidal.

■ We find no merit in either of these arguments. First, the plaintiff did not, after the charge, object to the aspect of the instruction now criticized. Although the plaintiff did make some objection to the court's proposed instructions before they were given, it is well settled that an "objection must be made after the charge is given to the jury, not before." *Transnational Corp. v. Rodio & Ursillo, Ltd.,* 920 F.2d 1066, 1069 (1st Cir.1990) (citing cases). After the charge, plaintiff's counsel purported to object to the instruction requiring "evidence that the jailers knew of [Jimmy Leshore's] mental state at a certain minute or hour on the night he died." The judge responded that "I didn't say that," and there followed a somewhat confusing colloquy in which no specific objection to the instructions was presented. *See* Fed. R.Civ.P. 51 (in objecting to jury instructions, a party must "stat[e] distinctly the matter objected to and the grounds of the objection"). Where there was no proper objection to the instructions, we will reverse only for plain error, a standard applied sparingly in cases of a failure to follow Rule 51. *Rodio & Ursillo,* 920 F.2d at 1069.

■ We do not find plain error here. To prevail in this case, the plaintiff had to show that the defendants had been deliberately indifferent to the medical needs of Mr. Leshore. *See, e.g., Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In explaining this legal standard to the jury, the district court followed the longstanding principle that a trial judge is not limited to instructions in the abstract, but may explain and comment on the evidence, and point out for the jury important portions thereof. *See Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933); *United States v. Silvestri,* 790 F.2d 186, 189 (1st Cir.1986). We find the judge's comments in this case to have been entirely appropriate. The instruction concerning Mr. Leshore's need for care "particularly" on the date of his death did not prevent the jury from finding that his earlier manifestations were so severe that the defendants should have known that he continued to need treatment on that date. Rather, the instruction pointed out for the jury that Mr. Leshore's condition on that particular date was important, allowing it to consider whether or not his condition appeared to have changed. As there was evidence that his condition did in fact appear to Ms. Roy to have changed, the judge's comment certainly did not constitute plain error. Likewise, the judge's comment that there was no evidence that a suicidal person remains forever suicidal was merely an accurate summary of the evidence—or lack thereof—that the judge considered important.

■ The second portion of the jury instructions alleged to be error is as follows:

[Was] [Mr. Leshore] denied psychiatric care? In this connection, I charge you that the Defendants are not required to provide him with a medical doctor psychiatrist. They are required to provide psychiatric care through someone who is trained in the field. It can be a social worker, it can be a psychologist, but it has to be somebody who is sufficiently trained to deal with the particular problem that Mr. Leshore had.

The appellant argues that this instruction was error because the county's failure to provide Mr. Leshore with treatment by a

psychiatrist constituted deliberate indifference. Again, no meaningful objection to this portion of the instruction was made following the charge, and we find no plain error. The appellant points to no authority holding that the provision of psychiatric care by a social worker constitutes deliberate indifference as a matter of law. The instruction properly informed the jury that the defendants had to provide psychiatric care through an adequately trained professional, and left the jury free to decide whether Ms. Roy was in fact such an individual.

For the reasons stated above, the judgment of the district court is *affirmed*. *Costs to appellees.*