**KEY BANK OF MAINE,**
**Plaintiff–Appellee,**

v.

**TABLECLOTH TEXTILE COMPANY CORPORATION, et al., Defendants–Appellants.**

**No. 94–2044.**

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1995.

Decided Jan. 30, 1996.

Eric A. Deutsch, with whom Testa, Hurwitz & Thibeault, Boston, MA, Peter G. Cary and Mittel, Asen, Eggert, Hunter & Altshuler, Portland, ME, were on brief, for appellants.

Thomas A. Cox, with whom Jennifer S. Begel and Friedman & Babcock, Portland, ME, were on brief, for appellee.

Before TORRUELLA, Chief Judge, LYNCH, Circuit Judge, and STEARNS,* District Judge.

TORRUELLA, Chief Judge.

Defendants–Appellants Tablecloth Textile Company Corp., ("Tablecloth"), Post & Sherman Textile Company, Inc. ("P & S") and Stuart Sherman ("Sherman") (collectively referred to as the "Appellants") appeal the denial of their motion to set aside a default

* Of the District of Massachusetts, sitting by designation.

judgment and for leave to file a late responsive pleading. We reverse, holding that because the notice requirement of Rule 55(b)(2) of the Federal Rules of Civil Procedure was not observed, and because Appellants provided strong evidence that the damage award was erroneously calculated, the default judgment must be set aside and the case remanded for further proceedings consistent with this opinion.

## I. *BACKGROUND*

The record in the present action reveals the following. The dispute underlying this appeal arose out of the sale of assets, particularly the licenses and inventory of a Maine corporation which was in default on its obligations to Plaintiff–Appellee Key Bank of Maine ("Key Bank" or the "Appellee"). On December 27, 1993, Key Bank commenced an action against the Appellants by filing a complaint in the U.S. District Court for the District of Maine, alleging that Tablecloth breached its obligations to Key Bank under various contracts and promissory notes and that Sherman and P & S were jointly and severally liable along with Tablecloth pursuant to an executed guaranty dated January 13, 1992. On December 30, 1993, service was made on the Appellants. The answer to the complaint was due on January 19, 1994, a date which came and passed with Appellants filing neither an answer nor a formal appearance.

On January 10, 1994, Key Bank's Maine counsel, Laurie B. Perzley, received a telephone call from Appellants' then-counsel in New York, Stephen Brown, indicating that Appellants wanted to pursue settlement negotiations. Perzley received a similar telephone call on January 20, 1994, from Sherman's brother, Tom Sherman, Esq. Stuart Sherman was subsequently informed by his brother that Appellants were already in default, at which point Sherman transferred the matter to the attention of corporate counsel for P & S and Tablecloth in New York, Ronit Fischer. Sherman implored Fisher to contact Key Bank's counsel and Vice President, Michael Lugli, to request additional time to respond to the complaint and to see if the parties could negotiate a settlement.

During the last week of January 1994, Fischer and Lugli spoke by telephone. The substance of their conversation was memorialized in Fischer's letter to Lugli dated February 1, 1994 (the "February 1 letter"). The February 1 letter evidences Appellants' understanding (i) that it served to commence settlement negotiations; (ii) that Key Bank would not request a default judgment unless and until it was determined that settlement negotiations had failed; (iii) that prior to seeking a default judgment, Key Bank would notify Fischer so that Appellants could seek Maine counsel and file the appropriate pleadings; and (iv) that, if negotiations failed, the letter's settlement offer would not prejudice either party's position in litigation. The February 1 letter also discussed "behind the scenes" circumstances that provided grounds for Appellants' defenses.

In response, Lugli penned a letter dated February 4, 1994 (the "February 4 letter"), indicating Appellee's willingness to enter into negotiations, if they "could be accomplished quickly." The letter requested financial information, enclosed Key Bank forms to be used, provided a February 16, 1994 deadline, and stated that Lugli would "instruct counsel to continue with the legal proceeding" were the deadline not met. Appellants did not submit the financial information by the deadline. Fischer maintains that although she received the financial questionnaire meant to be completed and submitted by Sherman, she "do[es] not recall" whether the package contained "a demand letter from Key Bank" dated February 4, 1994, indicating that a default would be sought unless all requested information was presented to Key Bank by February 16, 1994.

On February 25, 1994, Key Bank filed a response to the court's order to show cause why the action should not be dismissed for lack of prosecution along with an application to the district court clerk for entry of the default. Although Key Bank was aware that Appellants were represented by counsel who had requested notice before Key Bank sought to have default entered, it chose not to serve Appellants with those papers. On February 28, 1994, the clerk entered a default in favor of Key Bank under Fed.

R.Civ.P. 55(a) because of Tablecloth's failure to file a responsive pleading. On April 1, 1994, Appellee filed a motion for a default judgment, once again choosing not to serve Appellants. On April 8, 1994, the district court entered the default judgment ex-parte in the amount of $693,871.44, based on the affidavits and the unanswered request for admissions submitted by Key Bank.

During oral argument counsel for Key Bank admitted that Key Bank never sent Appellants notice of, or copies of any pleadings filed in connection with, these court actions. Key Bank further conceded that Appellants only learned of the entry of the default and of the default judgment in July 1994, when Key Bank's counsel, David Burke, contacted Fischer (who no longer was involved in the matter) to discuss execution of the judgment. Burke was referred to John Stahl, the controller for Post & Sherman, and they conducted settlement discussions through the remainder of July. Burke rejected a settlement offer on July 12, 1994, and informed Stahl that if a satisfactory settlement was not reached by August 1, 1994, Appellee would enforce the judgment. On July 25, 1994, Lugli received the financial information requested in February 1994 from Sherman.

The parties failed to reach a settlement by August 1, 1994. Accordingly, on August 15, 1994, Appellants filed a motion to set aside the default judgment and a motion to allow a late answer, along with supporting affidavits that detailed the inaccuracies of the damages as established by the unanswered request for admissions. On September 2, 1994, the district court denied Tablecloth's motion to set aside the default judgment and for leave to file a late responsive pleading (the "motion"). The district court stated that Appellants failed to meet their burden under Fed. R.Civ.P. 60(b), because their conduct did not constitute excusable neglect and they did not provide sufficient elaboration permitting the district court to determine that they had a meritorious defense (the "Order"). This appeal was filed on September 29, 1994. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

■ Despite the additional issues raised, disposition of this appeal begins and ends with the inquiry into whether the district court erred when it denied Appellants' motion to set aside the default judgment entered against them. We review the denial of a motion to set aside a default judgment for an abuse of discretion.[1] *Cotto v. United States*, 993 F.2d 274, 277 (1st Cir.1993) (discussing motion for Rule 60(b) relief); *Leshore v. County of Worcester*, 945 F.2d 471, 472 (1st Cir.1991) (explaining motion for Rule 55(c) relief); *U.S. v. One Urban Lot Located at 1 Street A–1*, 885 F.2d 994 (1st Cir.1989) (noting that review of motions for relief under Rule 55(c) is less demanding than that governing those seeking relief under Rule 60(b)); *see also In re Roxford Foods, Inc.*, 12 F.3d 875 (9th Cir.1993).

■ In their appeal of the denial of their motion to set aside default judgment, Appellants argue that they "appeared" in the action below for purposes of Rule 55(b)(2)[2] and, thus, were entitled to written notice[3]

---

**1.** Fed.R.Civ.P. 55(c) states:

    For good cause shown, the court may set aside an entry of default and, if judgment by default has been entered, likewise set it aside in accordance with Rule 60(b).

  Fed.R.Civ.P. 60(b) provides in part:

    On motion and upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, Order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud, ... misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for

reasons (1), (2), and (3) not more than one year after the judgment, Order, or proceeding was entered or taken.

**2.** Fed.R.Civ.P. 55(b)(2) reads, in pertinent part:

    If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

**3.** We note that although written notice is contemplated under the Rule, it need not necessarily be in any particular form. "The major consider-

three days prior to the entry of the default judgment. Appellants contend that because Appellee failed to satisfy the notice requirement of Rule 55(b)(2), the district court abused its discretion when it denied their motion, because, in so doing, it implicitly held that Appellee was not required to provide them with notice.[4] Predictably, Appellee disputes that Appellants appeared below and maintains that, under Rule 5(a), it was not required to provide Appellants with notice of the default pleadings.[5]

■ Although appearance in an action typically involves some presentation or submission to the court—a feature missing here—we have held that a defaulting party "has appeared" for Rule 55 purposes if it has "indicated to the moving party a clear purpose to defend the suit." *Muñiz v. Vidal*, 739 F.2d 699, 700 (1st Cir.1984) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir. 1970)). Our review of both the case law we cited in *Muñiz* and the decisions since *Muñiz* reveals there is ample support for our finding that Appellants' "informal contacts" with Key Bank demonstrated a clear intent to defend, and thus that they "appeared" in the action below.[6]

Here, Appellants "indications" of their intent are primarily evidenced by the February 1 letter from Fischer to Lugli. The letter, supplemented by affidavits on record, demonstrates that Fischer explained to Lugli that, because both P & S and Sherman had limited access to funds and were considering bankruptcy, available funds were better spent on the business, repaying Key Bank, and negotiating a settlement, than on litigating the matter. More importantly, the February 1 letter made clear Appellants' understanding that (i) the letter served to commence settlement negotiations; (ii) during the negotiations Key Bank "will forbear from filing a default motion based on [P & S's] failure to answer [in the action below]"; (iii) if "at *any time* [Key Bank] determines that the negotiations are not proceeding to a positive conclusion," it would notify Appellants so that they could retain Maine counsel to enter "the appropriate pleadings" (*emphasis original*); and (iv) reiterated that Appellants' "settlement offer was made without prejudice to each party's respective positions in litigation should the parties be unable to reach an amicable solution." The February 1 letter, in its review of the facts involved

---

ation is that the party is made aware that a default judgment may be entered against him." *Wilson*, 564 F.2d at 369 (quoting 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2687 (1973)).

4. We note that the district court's Order does not include a discussion of why Appellants failed to satisfy the requisite showing of excusable neglect and meritorious defenses for relief under Rule 60(b). Although absence of record indication that proper standards were applied in refusing to set aside a default has been held sufficient by itself to justify reversal, we need not decide this case on that limited basis. *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C.Cir.1980) (citing *Medunic v. Lederer*, 533 F.2d 891 (3d Cir.1976)).

5. Rule 5(a) provides that:

No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the method provided for service of summons in Rule 4.

6. *See, e.g., Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270, 271 (6th Cir.1981) (finding

appearance where defendants contacted plaintiffs and made clear that the damages sought were excessive); *H.F. Livermore*, 432 F.2d at 691 (finding appearance where exchanges between parties were normal effort to see if dispute could be settled and neither party doubted that suit would be contested if efforts failed); *Dalminter, Inc. v. Jessie Edwards, Inc.*, 27 F.R.D. 491, 493 (S.D.Tex.1961) (finding appearance where defendant contacted plaintiff's counsel by letter); *see also Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C.Cir.1980) (finding, *inter alia*, that assurances upon which defendants relied were part of, and grew out of, settlement negotiations which courts seek to encourage); *Liberty National Bank and Trust Co. v. Yackovich*, 99 F.R.D. 518 (W.D.Penn.1982) (setting aside default judgment because failure to answer was based upon reliance on agreement with plaintiff's counsel that notice would be provided prior to seeking default judgment). *Cf. J. Slotnik Co. v. Clemco Industries*, 127 F.R.D. 435, 438–39 (D.Mass.1989) (finding defendant did not appear where defendant was served with copy of plaintiff's motion for default, received notice from court clerk of entry of default, failed to respond to either plaintiff's motion or clerk's notice, and never displayed a clear purpose to defend).

**354**

and the bases for Appellants' settlement offer, also detailed Appellants' defenses and counterclaims in the event settlement negotiations failed.

■ Contrary to Appellee's assertions, once Appellants "appeared" for Rule 55 purposes they were entitled to notice of the application for default judgment under Rule 55(b)(2). We disagree with Appellee's argument that they were not required to provide notice under Rule 55(b)(2) because their February 4 letter effectively cancelled the intent to defend demonstrated in Appellants' February 1 letter. Specifically, Appellee argues that when the February 4 letter is considered together with Appellants' failure to respond by the February 16, 1994 deadline, it becomes clear that Appellee was not itself "on notice" in February 1994 that Appellants had a clear intent to defend. Appellants' failure to meet the deadline, Appellee maintains, was but another example of their "history of non-responsiveness."

We find Appellee's argument thoroughly unpersuasive, if not disingenuous. Appellants only two weeks before communicated a clear intent to defend.[7] Appellee also *knew* that Appellants were represented by counsel. Moreover, Appellee was well aware of Appellants' need to retain Maine counsel and of Appellants' understanding that notice would precede Appellee's seeking entry of default. It was Appellee's duty when seeking entry of default and judgment by default to apprise the district court of Appellants' February 1 letter and to give notice as contemplated under Rule 55(b)(2).

In addition, we are unpersuaded by Appellee's attempt to distinguish this case from *Muñiz*. Appellee argues that, unlike in *Muñiz*, the February 4 letter specifically put Appellants on notice that "if [Lugli] does not

receive this [financial] information prior to [February 16, 1994], [Lugli] will instruct counsel to continue with the legal proceeding." Appellee relies on a case we distinguished in *Muñiz, Wilson v. Moore & Associates, Inc.*, 564 F.2d 366, 369 (9th Cir.1977) (finding defendant's "informal contacts" insufficient to constitute an appearance because "plaintiff's 'informal contacts' provided actual, unqualified notice that delay would result in default"). Even assuming receipt of Key Bank's February 4 letter,[8] we do not find that Appellee's February 4 letter, which referred to "instruct[ing] counsel to continue with the legal proceeding," to amount to "*actual, unqualified, notice that delay would result in default.*" As we noted in *Muñiz*, in *Wilson* the defendant there neither filed a paper in court nor contacted opposing counsel. *Muñiz*, 739 F.2d at 701; *see Charlton L. Davis & Co., P.C. v. Fedder Data Center, Inc.*, 556 F.2d 308, 309 (5th Cir.1977) (noting that cases where actual notice of impending default judgment was given do not provide guiding precedent for situations in which no notice of any sort was given). While Appellants here did *not* file any court documents, because of the agreement to pursue settlement negotiations and the need to retain Maine counsel, they did contact opposing counsel, explicitly communicated their intent to defend and their understanding that Appellee would provide notice prior to seeking default so that they could retain Maine counsel.

■ Furthermore, Appellants presented strong evidence that the figures upon which the default judgment is premised are erroneous.[9] While Appellants' evidence does not indicate they possess an "ironclad claim or defense which will guarantee success at trial," *Teamsters*, 953 F.2d 17, 21, the evidence

---

7. We note that during oral argument, counsel for Appellee conceded that the February 1 letter, viewed on its own, demonstrated Appellants' intent to defend.

8. We resolve the factual question as to Fischer's receipt of the February 4 letter in favor of Appellants because of the strong policy favoring resolving disputes on the merits. *Leshore*, 945 F.2d at 472 (quoting *Coon*, 867 F.2d at 76).

9. We note that the fact that P & S and Sherman have sought and received protection under the

United States Bankruptcy Code does not affect our consideration of the issue of damages. Even though all actions in this appeal are stayed as respect to P & S and Sherman pursuant to 11 U.S.C. § 362 (1994); *see Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir. 1986); *Association of St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 449 (3d Cir.1982), they are not stayed as respect to Tablecloth.

regarding the damages "does establish that [Appellants] possess a potentially meritorious claim or defense which, if proven, will bring success in its wake," at least as to the amount of damages. *Id.* The amount of damages involved is substantial, and the record suggests that the damage award is possibly erroneous by as much as $611,870. Thus, Appellants have given us good reason to believe that setting aside the judgment will not be a futile gesture. *Id.* at 20 (stating that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise); *Swink v. City of Pagedale,* 810 F.2d 791, 792 n. 2 (8th Cir.1987) ("There is a strong public policy, supported by concepts of fundamental fairness in favor of trial on the merits, particularly when the monetary damages sought are substantial."); *Lutomski,* 653 F.2d at 271 (remanding case for a damages hearing where defendants conceded liability yet presented strong arguments that damages awarded were excessive).

Finally, contrary to Appellee's claim, there is nothing in the record to suggest that Appellants would not defend the suit once settlement negotiations failed.[10] We also note that Appellants' motion to set aside the default judgment (dated August 15, 1994) was reasonably timely, considering that they only learned of the default and the default judgment in July 1994 and that negotiations continued until August 1, 1994.

In sum, because we find that Appellants presented sufficient evidence of their intent to defend, they "appeared" in the action below, such that they were entitled to notice under Rule 55(b)(2) of Appellee's application seeking the default judgment.[11] We consider Appellee's failure to provide the requisite notice a grave error, we hold that the lack of notice, coupled with Appellants' showing of the existence of a potentially meritorious defense (at least as to the amount of damages), requires that the default judgment be set aside.[12] *See* Rule 60(b)(4), (6) (permitting judgment to be set aside where judgment is shown to be "void" or for "any other reason justifying relief"). The district court abused its discretion when it denied Appellants' motion to set aside the default judgment. Not only did it fail to recognize Appellants' clear intent to defend evidenced in the February 1 letter (or recognized it but decided, contrary to our holding in *Muñiz,* that notice was not required), it also failed to recognize Appellants' meritorious claim that the damage award was erroneously calculated.

Although our conclusion that Key Bank's failure to provide notice as required by Rule 55(b)(2) necessitates that the default judgment be set aside, it is less clear whether there exists a basis for setting aside the entry of default itself under Fed.R.Civ.P. 55(c). We believe that, in the circumstances, it was incumbent upon Key Bank to live up to its representation that it would notify Appellants if it planned to seek entry of default. It is a separate question whether there exists "good cause" for Appellants' default within

---

10. We note that in addition to the February 1 letter, which discussed the grounds for Appellants' defenses, Key Bank was aware of potential defenses and counterclaims as early as December 1992 when it received a letter sent by Fischer, dated December 11, 1992, discussing why P & S was not in default on the notes.

11. By thus holding, we do not suggest that district courts should be compelled to vacate default judgments whenever a defendant communicates with the plaintiff after service of the complaint. *See Wilson,* 564 F.2d at 370–71 (Wright, J., dissenting) ("I do not share the majority's fear that reversal here would compel district court's to vacate default judgments whenever a defendant communicates with the plaintiff after service of the complaint."). Instead, we simply re-affirm our rule that defendants who "appear" through

informal contacts demonstrating a clear intent to defend are entitled to notice under Rule 55(b)(2). *Cf. Taylor v. Boston and Taunton Transportation Co.,* 720 F.2d 731, 733 (1st Cir.1983) (discussing that not every act addressed to the court or related to the litigation will be deemed an appearance); *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Co., Inc.,* 842 F.2d 164, 168–70 (noting that Rule 55(b)(2)'s plain language, "has appeared in the action," evidences intent to impose a notice requirement only in limited circumstances).

12. Accordingly, we need not discuss the parties' remaining arguments regarding the existence of excusable neglect or whether the district court abused its discretion when it awarded damages ex-parte based largely on the unanswered request for admissions.

the meaning of Fed.R.Civ.P. 55(c). *See Leshore*, 945 F.2d at 472. While the district court had occasion to consider this issue, its order indicates that it declined to do so. We, however, are of the opinion that this issue is more appropriately resolved by the district court in the first instance on remand.

■ Although nothing more need be said, we nonetheless add that it would have been a simple matter for Appellee to have notified Appellants' counsel of the default proceedings. We find the language of *Charlton L. Davis* particularly on point:

> If the plaintiff felt [the defendant] was guilty of dilatory tactics and had no real defense, then notice under Rule 55 would have promptly resolved the matter. Instead, plaintiff sought to reap tactical advantage from [defendant's] prior neglect by acquiring by stealth a decision sheltered by the rules which protect final judgments. Such practice is what Rule 55 is designed to prevent.

*Charlton L. Davis*, 556 F.2d at 309. We reiterate that this rule rests upon the view that the Federal Rules of Civil Procedure are designed to be fair, that Rule 55(b)(2) was promulgated to protect "parties who, although delaying in a formal sense by failing to file pleadings within the twenty-one day period, have otherwise indicated to the moving party a clear purpose to defend the suit," *H.F. Livermore*, 432 F.2d at 691, and our traditional preference for resolution of cases on the merits while giving due consideration to practical requirements of judicial administration. *See Cotto*, 993 F.2d at 277–80; *Teamsters*, 953 F.2d at 19–21; *Leshore*, 945 F.2d at 472–73; *see also In re Roxford Foods, Inc.*, 12 F.3d 875, 879–81 (9th Cir. 1993).

Before closing, we respond to an assertion raised by Appellee's counsel during oral argument to the effect that any appearance we found would apply only to P & S, because the February 1 letter only referred to P & S. We disagree. Admittedly the February 1 letter states that Appellee will forbear from filing a default motion based on *P & S'* failure to answer, and makes no mention of the failure to answer by Sherman or Tablecloth. Nevertheless, we do not find Appellee's argument persuasive. The record reveals that (i) Fischer launched the settlement negotiations at Sherman's request; (ii) the February 1 letter refers to Sherman as well in its discussion; (iii) Sherman is the president of both Tablecloth and P & S; and (iv) Appellee's Complaint grounds joint and several liability on Sherman and P & S as guarantors of the promissory notes executed by Tablecloth, which are the basis for Appellee's collection action below. Accordingly, we find it reasonable to read the February 1 letter which "serve[d] to commence settlement negotiations with [Key Bank] in the [action below]" as being intended to speak for all of the named defendants.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's Order, and vacate the default judgment. We leave to the district court on remand to determine whether, in the circumstances, there exists a basis for setting aside the entry of default pursuant to Fed.R.Civ.P. 55(c), and whether Appellants should accordingly be permitted to file a late responsive pleading.[13] While we disapprove of Appellee's behavior, we note Appellants' apparent inattention to negotiations and to the case below during the mid-February to July hiatus in communications. Consequently, we decline to award costs to Appellants.

*Reversed and remanded.*

---

13. Should the district court on remand find no basis for removing the default under Rule 55(c), a new proceeding as to the proper amount of damages would then be in order.