STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

JUL 08 2002

RECEIVED AND FILED
Susan Guillette, Clerk

STATE OF MAINE

KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-054

LORI STORER,

Plaintiff

v.

DECISION AND ORDER

GORDON BLACKLER,
GREG BLACKLER, ESTATE
OF GARY BLACKLER, MARK
BLACKLER, BARBARA
LACOUNT and JANE SPROWL,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

JUL 18 2002

## I.    Introduction.

This matter is before the court on the motion of defendants Mark Blackler and the Estate of Gary Blackler to set aside default judgment. They also ask for leave to file a late answer to the plaintiff's complaint.

In her complaint, the plaintiff alleges that on July 6 or 7, 1999, she was invited by Greg Blackler on to property owned by the defendants listed in the caption of this case. While there, she says she stepped on a piece of sharp glass which caused her a variety of injuries. Generously read, the complaint says that the defendants breached a duty of care they owed to the plaintiff which, she says, resulted in the injuries cited.

As with any debate concerning the entry of a default or a default judgment, the procedural history of the case is important. It may be recited here as follows:

- August 29, 2000. The complaint dated August 19, 2000, was filed in this court.

- September 5, 2000. Mark Blackler was served with a summons.

- September 11, 2000. Susan Blackler was served with a summons.

- December 29, 2000. Both summons were filed with this court.

- January 31, 2001. The plaintiff filed a motion for default with an accompanying affidavit by counsel.

- March 1, 2001. The plaintiff, by counsel, files form CV-061, entitled "Affidavit and Request for Default and Default Judgment," alleging that defendants Mark Blackler and Susan Blackler had failed to appear, plead or otherwise defend the action, and that both are Knox County residents so that venue was properly in that county. The form was accompanied by an affidavit nearly identical to the one filed on January 31, 2001.

- March 5, 2001. The clerk entered the default.

- April 4, 2001. A hearing on damages was conducted.

- April 5, 2001. The court entered judgment for the plaintiff against Mark Blackler for $16,623.17.

- April 5, 2001. The plaintiff filed an amended motion for default asking for a default against defendant, Estate of Gary Blackler, alleging that this entity was served through Susan Blackler, a personal representative, so that the order of default be vacated as to her individually but entered instead as to the estate which, the plaintiff claimed, had never appeared or answered.

- April 11, 2001. The court granted the last motion, finding that the Estate of Gary Blackler had been served and had failed to enter an appearance or respond so that a default was entered against the estate and the default vacated as against Susan Blackler.

2

- April 19, 2001. The court entered judgment against the Estate of Gary Blackler in the sum of $16,623.17.

- May 4, 2001. Defendants Mark Blackler and the Estate of Gary Blackler filed the pending motion.

## II. Discussion.

In their motion to set aside the default judgments, the defendants endeavor to satisfy the familiar two-prong test to set aside a default which requires that they provide a reasonable excuse for the default and a meritorious defense to the underlying action. *Theriault v. Gauthier*, 634 A.2d 1255, 1256 (Me. 1993). From *Theriault*, it can be understood that the reasonable excuse which the defendants must demonstrate is synonymous with the excusable neglect standard found at M.R. Civ. P. 60(b)(1). This is a higher standard than the "good cause" showing required to set aside the entry of a default via M.R. Civ. P. 55(c) *Id.*

In support of this their efforts to establish a reasonable cause for their failure to file answers, the defendants provide the following history by way of affidavits from their insurer's agents:

Christopher Rand (Rand) is a claims specialist for Middlesex Mutual Assurance Company (Middlesex) which insures the Estate of Louise Blackler and her beneficiaries who were each given an interest in the subject property. He advises that on September 6 his employer received the summons and the complaint in this action. On September 11, 2000, he contacted plaintiff's counsel, Robert J. Rubin, Esq. (Rubin), to discuss an extension of time to answer the complaint and streamline the case by dismissing some of the defendants. This was done to give Middlesex time to investigate the claim and explore settlement without having to incur defense costs. According to Rand, Rubin

3

agreed to an "open, unlimited extension of time to answer subject to a twenty (20) day revocation." Rand Affidavit, ¶ 8. On this same date, Rand wrote to Rubin to confirm the extension of time to answer and requested the latter's written confirmation that their understanding of the extension was the same. He also asked for copies of medical bills and lost wage materials. On September 20, he attempted to make telephone contact with Rubin for the same purpose. Rubin replied to neither communication attempts.

On September 27, 2000, Allan C. Armstrong (Armstrong), a claims manager with Middlesex, wrote to Rubin asking for written confirmation that he had agreed to an open, unlimited time to respond to the complaint and inquired whether there was a misunderstanding in this regard. Rubin did not reply to this correspondence.

On November 3, 2000, Middlesex claims specialist Jeffrey Haley (Haley), who took over this case from Rand, received a letter dated October 29, 2000, from Rubin in which the latter provided a list of the plaintiff's damages. The letter also advised its reader that the plaintiff was willing to discuss resolution and, if the case could be settled before November 14, she would be willing to discount future damages. The letter made no mention of an agreement to extend the time to answer the complaint, or its revocation.

On December 28, 2000, Rubin faxed a copy of his October 29, 2000 letter to Middlesex which was received by Armstrong. On that date, Armstrong spoke with Rubin by phone and was advised by Rubin that he wanted to move the matter forward, but did not discuss revocation of the agreement as to an extension of time to answer the complaint. Armstrong advised Rubin that the adjuster in charge of the case, presumably Haley, was on vacation and would contact him on his return.

On January 10, 2001, Haley, on return from his vacation, left a telephone message for Rubin to which the latter did not reply.

According to Armstrong, notice of the motion for default was never sent to Middlesex, nor did the company get notice of the hearing on the motion which was held on April 4, 2001. Middlesex did not learn of the default judgment until it received it on April 23, 2001, from the defendants who had received it on April 21, 2001.

The plaintiff, via an affidavit by Rubin, provides the following account of the dealings with Middlesex as defendants' insurer:

On a date in early September, before September 11, 2000, Rubin received a telephone call from Rand advising the former that he had received a copy of the summons and complaint from one or two of the defendants and that Middlesex had issued insurance coverage on the property. Rubin acknowledges that Rand asked for an extension of time to answer the complaint and that the two also discussed whether the other defendants would agree to appear without being served. Rubin alleges that nothing was agreed to and that he told Rand that he needed to discuss the matter with his client but was inclined to agree to the extension on the condition that the other defendants would agree to appear without having been served. According to Rubin, Rand agreed that he would get back to Rubin as to whether or not he could accept service for the remaining defendants.

Rubin acknowledges receipt of Rand's letter of September 11, but says he was surprised that it asserted there was an agreement between them and, because in his view no agreement had been reached, he did not send him the confirmation requested.

Rubin says he placed several telephone calls to Rand through mid-October which were not returned, and that Rand had left a message on his answering machine which was returned, but to no avail.

Rubin says he wrote to Middlesex on October 29 twice. The first letter is the one received by Haley on November 3 which recites the plaintiff's damages and represents that if the case is settled before November 14, future damages may be discounted. The second letter advises Middlesex that if the case is not settled by November 14, the plaintiff will proceed with the litigation and move for a default for failure to answer.[1] Rubin received no reply to these letters.

Rubin agrees with Armstrong that they spoke by telephone on December 28, 2000, during which call Rubin says he complained that he was not receiving responses to his earlier request for settlement after which Rubin faxed the first October 29 letter to Armstrong.

On January 3, 2001, Rubin called Rand and, unable to reach him, left a message that someone with responsibility needed to call him back promptly. That day, Armstrong called him back and Rubin complained that he was getting no responses from Middlesex after sending them a complete file on his client's damages.[2] According to Rubin, Armstrong assured him that someone would get back to him. Rubin says that from that date until early February, no one from Middlesex communicated with him.

---

[1] Middlesex denies receiving this letter and has questioned its authenticity. At oral argument, the parties agreed that Middlesex never received this second October 29 letter.

[2] It is possible that Rubin has cited two dates for the same call, December 28, 2000, and January 3, 2001, because the alleged contents of the call appear to be the same.

The defendants argue that they have a reasonable excuse for their failure to answer the complaint in that they had an agreement with plaintiff's counsel that they need not answer unless the latter revoked the agreement with 20 days' notice. The plaintiff, for her part, denies the existence of the agreement and assigns the failure to answer to the defendants' insurer having ignored attempts to settle the case and "dropping the ball" in its handling of the matter. In sum, the plaintiff alleges that the defendants' representative was negligent in its management of this case which cannot be considered "excusable neglect" for the defendants' inaction. M.R. Civ. P. 60(b)(1).

The debate in this case therefore turns on the facts and the interpretation one may wish to assign to them. The task in resolving this dispute is made more difficult by the necessity of relying on affidavits which recite facts and events without the corroboration that might easily have been produced. For example, Armstrong's affidavit cites a letter he wrote to Rubin on September 27, 2000, but provides no copy of that letter. Rubin's affidavit claims a number of telephone calls to Middlesex, but is accompanied by no telephone records.

More importantly, it is difficult to conclude whose recitation of the events and their interpretation is the more plausible. Again, by way of several examples, among others that might be cited, if there truly were no agreement to allow the defendants an open-ended but revocable time to respond, it is difficult to understand how or why attorney Rubin would fail to respond to Rand's and Armstrong's letters asking for confirmation of their understanding of the status of the case by clarifying or rejecting their view of the matter either then or in his letter of October 29. By the same token, when Rand and Armstrong received no reply to their letters, it is difficult to understand how or why they either did not press for an answer or conclude that there was no

7

agreement because Rubin had failed to confirm its existence, particularly when they were apparently aware of their obligation to answer for the insureds in a timely way.

There is no touchstone or single event in this history which allows the court to decide which party has either recited the events accurately or has the more persuasive argument as to the interpretation that should be accorded to the facts they do agree upon.

When the persuasiveness of the competing evidence is in equipoise so that the court cannot, on the slight record produced, conclusively settle the parties' debate, the resolution of the controversy must be settled in favor of the defaulting party. This is because the strong preference in the law for resolving cases on their merits would be violated by interpreting these facts in favor of the plaintiff and thereby finding an absence of excusable neglect which would leave the default judgment intact. *Key Bank of Maine v. Tablecloth Textile Co.*, 74 F.3d 349, 354, n.8 (1st Cir. 1996); *Thomas v. Thompson*, 653 A.2d 417, 420 (Me. 1995).

From this analysis, then, the court is compelled to resolve this dispute in the defendants' favor and infer from the contested facts that their insurer reasonably believed that it had an agreement that it need not answer the complaint until the plaintiff revoked the agreement on 20 days' notice. This constitutes excusable neglect because, in this interpretation of the facts, there was no neglect at all. That being so, the pursuit of the default and default judgment violated that agreement so they must be set aside.

In the court's view, this is a just result in this case not only because it allows the case to be decided on its merits, as the law prefers, but also because the insureds acted promptly in notifying the insurer of their receipt of their summonses. So even when, as

alleged here, the insurer has been negligent, and the insured may be held accountable for its inaction, "the conscientiousness of the insured in seeking a timely response to a lawsuit can mitigate the impact of this principle in a default situation." *Thomas v. Thompson*, 655 A.2d at 240.

As noted, a defaulting party must also show that it has a meritorious defense before it may be successful in setting aside a default. *Theriault v. Gauthier*, 634 A.2d at 1256. Its version of the facts and circumstances supporting the defense is to be taken as true. *Hamby v. Thomas Realty Assoc.*, 617 A.2d 563, 564 (Me. 1992).

Here, the defendants say that they did not know of any broken glass on their property and that Greg Blackler had no reason to believe that there was such a foreign object on the lawn because he had mowed and raked the lawn the day before the plaintiff stepped on glass there.[3]

Under Maine law, when an invitee is injured by a foreign substance "on the floor" that party "ordinarily bears the burden of proving the defendant's negligence by establishing (1) that the defendant caused the substance to be there, or (2) that the defendant had actual knowledge of the existence of the foreign substance, or (3) that the foreign substance was 'on the floor' for such a length of time that the defendant should have known about it." *Milliken v. City of Lewiston*, 580 A.2d 151, 152 (Me. 1990). The complaint alleges none of these elements of the tort action relied upon by the

---

[3] The fact that these factual assertions have been presented by hearsay is of no consequence. The case relied on by the plaintiffs for the proposition that evidence in an affidavit must be admissible concerns summary judgment practice which specifically requires admissible evidence. *Steeves v. Irwin*, 233 A.2d 126, 129 (Me. 1967) (citing M.R. Civ. P. 56(e)). The parties have cited no case, and this court is aware of none, which requires that a showing of a meritorious defense be based on evidence which is admissible under summary judgment standards. Indeed, in a case analogous to the one at bar, *Hart v. Terry L. Hopkins*, 588 A.2d 1187, 1190 (Me. 1991), the Law Court held that there is no requirement that the allegations supporting a meritorious defense need be admissible at trial.

9

plaintiff, and, even if it did, the defendants have cited evidence to the effect that the defendant who invited the plaintiff on to the defendants' premises, and his co-defendants, had no knowledge of the presence of the glass which injured the plaintiff. That being so, it must be concluded that the defendants have a meritorious defense to this action.

Based on the foregoing, the court finds that there was excusable neglect by the defendants in their failure to respond to the complaint and, further, that they have a meritorious defense to the plaintiff's claim. By the same reasoning, the court finds good cause to set aside the default. M.R. Civ. P. 55(c).

That being so, the court must grant the defendants' motion and the clerk will make the following entry:

> Defendants' Motion to Set Aside Default Judgment is GRANTED. The default and the default judgment are set aside. Defendants are ORDERED to answer the complaint within 20 days of the filing date of this Decision and Order.

So ordered.

Dated: July__3__, 2002

John R. Atwood
Justice, Superior Court

10

Date Filed __8/29/00__     Knox     Docket No. __CV-00-054__
                               County

Action __Personal Injury__

|  |  |
|---|---|
| LORI STORER | GORDON BLACKLER; GREG BLACKLER; ESTATE OF GARY BLACKLER: MARK BLACKLER; vs. BARBARA LACOUNT and JANE SPROWL |
| Plaintiff's Attorney<br>Robert J. Rubin, Esq.<br>480 West St<br>Rockport ME 04856<br>236-8260 | Defendant's Attorney<br>Martha C. Gaythwaite, Esq. (Greg Blackler<br>PO Box 4726             and the Estate<br>Portland ME  04112-4726    of Gary Blackler)<br>761-0900 |

| Date of Entry | |
|---|---|
| 8/29/00 | Compliant, Summary Sheet, $120 fee filed by Attorney Rubin. Case File Notice mailed to Attorney Rubin. |
| 12/29/00 | Return of Service on Summonses filed:<br>-Estate of Gary Blackler served through Susan Blackler on 9/11/00; and<br>-Mark Blackler served on 9/5/00. |
| 2/1/01 | Motion for Default: Affid... |