STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-193

WHOLLY COW, LLC,

Plaintiff

v.

TAYLOR STITCH, INC.,

Defendant

ORDER ON DEFENDANT'S
MOTION TO SET ASIDE
DEFAULT JUDGMENT

Before the court is defendant's motion to set aside default judgment. M.R. Civ. P. 60(b)(1).

For the following reasons, the motion is granted.

CLAIMS

In early 2020, Wholly Cow, LLC (WC), a registered Maine Limited Liability Corporation,

and Taylor Stitch, Inc. (TS), a registered Delaware Corporation with headquarters in San

Francisco, entered into a commercial lease agreement for property located at 75 Market Street,

Suite 204, in Portland, Maine.

The lease, attached to WC's complaint as exhibit A, obligated TS to pay a security deposit

of $3,286.50 and to pay a first month's rent of $821.63. Beginning April 1, 2020, TS was obligated

to pay $1,643.25 monthly in rent; this amount was to increase annually every year thereafter. The

lease agreement also obligated TS to pay a late fee of 5% of rent after seven days, to pay for certain

operating expenses as defined in paragraph six of the lease, and, pursuant to paragraph eight, to

reimburse the landlord for any expenses incurred in seeking to enforce the lease's provisions. TS

argues that it never took possession of the leased property because the premises were not available

1

REC'D CUMB CLERKS OFC
JAN 11 '22 AM8:20

on the March 1 effective date and keys were not delivered. WC spent approximately $6,675 carpeting and painting the premises in preparation for TS's arrival.

WC argues that in early April 2020, TS requested that the lease's execution be delayed two months. WC agreed to the request on the condition that TS pay the required security deposit. TS did not pay the deposit. On June 26th, 2020, WC informed TS that it was in default of the lease. TS responded to WC's allegation, "I think it's best to terminate the lease and remarket[] it."

WC sent TS a "Notice of Lease Termination and Acceleration of Rent" and demanded payment for the current outstanding balance of base rent plus costs to rent the premises and renovate if necessary. The notice was mailed on July 17, 2020.

On May 17, 2021, WC filed a two count complaint against TS in the Cumberland County Superior Court. In count I, plaintiff alleges a breach of contract for TS's failure to make any payments on the lease and seeks the entire balance of the lease, $81,017.74, in damages.[1] In count II, plaintiff alleges promissory estoppel and claims that the defendant relied on TS's promise to take possession of the premises and incurred at least a $7,394.63 loss in preparing the premises for TS's arrival. A copy of WC's complaint was served on Corporation Service Company, TS's registered agent in Delaware, on May 21, 2021.

On June 15, 2021, after TS failed to respond to the complaint, WC moved for an entry of default and default judgment. M.R. Civ. P. 55(a) & 55(b)(2). On June 21, 2021, the Cumberland County clerk entered default against TS. On July 13, 2021, the court entered a default judgment against TS and in favor of WC in the amount of $81,017.74 plus interest. On August 2, 2021, the court awarded WC attorney's fees of $5,124.10, costs of $475.00, and interest.

---

[1] This balance is sought pursuant to paragraph thirteen of the lease which says that, in the event of default, the "Tenant shall . . . immediately be liable for and pay to Landlord the entire unpaid rental and all other balances due under this lease for the remainder of the term."

2

TS argues it was not made aware of the lawsuit against it during the pendency of the suit and did not receive notice of the complaint from its registered agent. Because of the pandemic, TS employees worked remotely at TS's San Francisco office but visited the office infrequently to pick up mail and forward mail to the appropriate executive. TS became aware of the suit only after receiving a copy of the default judgment at its San Francisco headquarters in mid-August 2021. TS took immediate action to defend the lawsuit.

On September 23, 2021, TS filed a motion to set aside the entry of default and the default judgment. M.R. Civ. P. 55(c) & 60(b)(1). Plaintiff objects.

DISCUSSION

TS moves to set aside the default judgment. It argues that its failure to respond to WC's complaint constitutes excusable neglect and that defendant has a meritorious defense to WC's allegations.

Excusable Neglect

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." M.R. Civ. P. 55(c). "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons . . . excusable neglect." M.R. Civ. P. 60(b)(1). To obtain relief based on excusable neglect, a party must show (1) a reasonable excuse for the default; and (2) a meritorious defense to the action. A. Dean Corp. v. White, 429 A.2d 1010, 1011 (Me. 1981). The standard for "excusable neglect" is more stringent than the standard for "good cause" under Rule 55(c) because "excusable neglect" implicates the rule that favors final judgments. Hamby v. Thomas Realty Assocs., 617 A.2d 562, 564 (Me. 1992).

3

<u>Reasonable Excuse for the Default</u>

Although TS is a Delaware corporation, its principal place of business is located in San Francisco. TS's Delaware based agent, Corporation Service Company, is designated to receive any service intended for TS and forward the documents to TS's headquarters. According to TS's CEO, in response to pandemic pressures, TS employees entered the office sporadically to collect and forward important mail to the appropriate parties. The notice of WC's complaint, confirmed as received by Corporations Service Company, was not received by TS. It maintains that the unique circumstances of 2020 constitute excusable neglect under Rule 60(b)(1).

WC relies on Maine cases in which the Law Court declined to reverse a denial of a motion to set aside default by the trial court. <u>See</u> <u>Maroon Flooring, Inc. v. Austin</u>, 2007 ME 75, ¶ 8, 927 A.2d 1182 (attorney placing essential litigation documents in the wrong filing bin did not constitute excusable neglect); <u>Hamby</u>, 617 A.2d at 564 (negligence of a defendant's agent in not delivering notice of the law suit to partners did not constitute good cause); <u>Steel Serv. Ctr. v. Prince Macaroni Mfg. Co.</u>, 438 A.2d 881, 882 (Me. 1981) (Massachusetts counsel's failure to forward summons to Maine counsel because of several lawsuits against the defendant did not constitute excusable neglect).

The standard for excusable neglect is met when extraordinary circumstances work an injustice. <u>See Gregory v. City of Calais</u>, 2001 ME 82, ¶ 7, 771 A.2d 383. The court has discretion in enforcing procedural rules. <u>Id.</u> The issue here is whether the extraordinary circumstances resulting from the pandemic and its effect on business operations permit the court to find a reasonable excuse for the default in this case. The court concludes that they do. In spite of the pandemic's mandate of remote work, TS employed procedures to ensure important documents

4

were forwarded to the appropriate person. In spite of those procedures, TS did not receive WC's complaint.

Meritorious Defense

The party seeking to set aside a judgment must next show the existence of a meritorious defense to the underlying action. A. Dean Corp., 429 A.2d at 1011. TS maintains that it has a meritorious anticipatory repudiation defense to WC's allegations. Specifically, TS asserts that WC anticipatorily repudiated the lease by failing to deliver possession of the unit to TS on March 1, 2020. WC counters this allegation by saying that TS must show more than a delay in delivering possession to establish an anticipatory repudiation defense to their suit.

Anticipatory repudiation requires proof of a "definite and unequivocal manifestation of intention" by the repudiator that it "will not render the promised performance when the time fixed for it in the contract arrives." Wholesale Sand & Gravel, Inc. v. Decker, 630 A.2d 710, 711 (Me. 1993). "The manifestation of an intention to repudiate a contract may be made and communicated by either words or conduct." Id. "The words or conduct evidencing such refusal or inability to perform, however, must be definite, unequivocal, and absolute." Id. TS argues that in the context of setting aside a default judgment, it is appropriate to resolve any factual disputes in favor of the defaulting party because of a strong policy preference for resolving disputes on the merits. See, e.g., Key Bank v. Tablecloth Textile Co., 74 F.3d 349, 354 n.8 (1st Cir. 1996). When considering "the meritorious defense component the moving party's version of facts and circumstances supporting his defense is deemed to be true." Hamby, 617 A.2d at 564.

The parties' lease provided that the premises would be delivered by WC to TS on March 1, 2020. TS alleges that WC did not render the promised performance when the time fixed in the

5

lease arrived. Deeming these facts and circumstances to be true, TS has shown the existence of a meritorious anticipatory repudiation defense.

The entry is

> Defendant Taylor Stitch, Inc.'s Motion to Set Aside Default Judgment is GRANTED.
>
> The Default entered against Defendant Taylor Stitch, Inc. on June 21, 2021 is set aside.
>
> The Default Judgment entered against Defendant Taylor Stitch, Inc. on July 14, 2021 is set aside.
>
> The Order entered August 2, 2021 is set aside.
>
> Defendant Taylor Stitch, Inc. will have 21 days from the date of this order to respond to Plaintiff Wholly Cow, LLC's Complaint.

Date: January 10, 2022

Nancy Mills
Active Retired Judge

6