Scott COON, Plaintiff, Appellee,

v.

Robert P. GRENIER,
Defendant, Appellant.

No. 88–1658.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1988.

Decided Feb. 2, 1989.

John A. McQueeney, with whom, Higgins & Slattery, was on brief, for defendant, appellant.

J. Joseph Nugent, Jr., for plaintiff, appellee.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

SELYA, Circuit Judge.

We are called upon to decide whether an entry of default may stand in the face of unsuccessful efforts below to remove it. Because we believe that, in the circumstances of this case, good cause existed to set aside the default, we reverse the decision of the district court and remand for further proceedings.

## I

Plaintiff-appellee Scott Coon was injured in a traffic accident in Bellingham, Massachusetts on the first of March, 1985. On July 25, 1986, he initiated this action in the United States District Court for the District of Rhode Island against the driver of one of the cars, defendant-appellant Robert P. Grenier. Jurisdiction was premised on diversity and amount, 28 U.S.C. § 1332(a), Coon and Grenier being citizens of Massachusetts and Rhode Island respectively.[1] What ensued was a string of failed at-

---

1. When the accident occurred, defendant resided at 30 Chalapa Avenue, Woonsocket, Rhode Island. At some point thereafter, unbeknownst to plaintiff, he moved to 21 Georgianna Drive, North Smithfield, Rhode Island.

tempts at service, ultimately building to an entry of default.

Coon was unable to locate or serve Grenier at 30 Chalapa Avenue in July 1986. His attorney corresponded with the postal service and was informed—erroneously, as matters turned out—that Grenier's forwarding address was unknown.[2] Contact with the Rhode Island Registry of Motor Vehicles (RMV) revealed that Grenier had defaulted on his statutory obligation to provide the RMV with his current address.[3] Coon's attorney wrote at least one letter to Grenier's liability insurance carrier in an effort to ascertain his whereabouts, but the inquiry went unanswered. Throughout, plaintiff acted diligently in obtaining extensions of the 120–day service period. *See* Fed.R.Civ.P. 4(j).

On January 6, 1987, the district court granted Coon's motion for substituted service. The court adopted plaintiff's suggestion that service upon Grenier be accomplished in two ways: (1) by tacking the summons and complaint to the front door at 30 Chalapa Avenue; and (2) by certified mail sent to defendant at the same address. On February 18, 1987 the papers were nailed to the portal. The mailing was sent but no return receipt was ever received. The rest is predictable: appellant failed to answer the complaint; Coon requested an entry of default over a year later; the clerk of the district court obliged on March 25, 1988. At about the same time, plaintiff

caused process to be served directly against Grenier's insurer. The insurer filed a timely answer on its own behalf.[4]

On May 13, 1988 Grenier—having been notified of the lawsuit for the first time by his insurer's counsel—moved to vacate the entry of default. He filed two affidavits, one indicating that he had never been aware of, or served in, the suit; and the second detailing the existence of what he claimed to be a meritorious defense. On June 8, the district court heard arguments, refused to vacate the default and, following proof of claim, entered judgment against Grenier for $80,000.

## II

Action upon a motion to set aside an entry of default lies within the sound discretion of the district court. *United States v. One Urban Lot, Etc.*, 865 F.2d 427, at 429 (1st Cir.1989); *Smith & Wesson v. United States*, 782 F.2d 1074, 1083 (1st Cir.1986); *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.1984); *United States v. 147 Division St., Located in Woonsocket, R.I.*, 682 F.Supp. 694, 697 (D.R.I.1988); *Phillips v. Weiner*, 103 F.R.D. 177, 179 (D.Me.1984). While the exercise of discretion is, of course, bounded by the specific circumstances of each case, the frontier is staked out by the "good cause" criterion of Fed.R. Civ.P. 55(c).[5]

**2.** We were told at oral argument that Grenier had left a forwarding address with the post office and that it lapsed on May 12, 1986 (some 14½ months after the accident). An envelope in the district court file was said to bear witness to this fact. Plaintiff's counsel did not dispute the matter, but pointed out, accurately, that "the forwarding order had expired and was unavailable to [Coon]" by the time plaintiff started suit.

**3.** The statute in question reads:

Whenever any person after making application for or obtaining the registration of a vehicle shall move from the address named in the application or shown upon a registration card, such person shall within ten (10) days thereafter notify the registry in writing of his old and new addresses.

R.I.Gen.Laws § 31–3–34 (1982).

**4.** Under R.I.Gen.Laws § 27–7–2 (1979), an injured party may bring a direct action against a liability insurer if the insured cannot be served

and the constable returns the process "non est inventus." In this case, plaintiff secured such a return in December 1986. On January 7, 1987, the district court allowed plaintiff's motion to amend his complaint in the pending action against Grenier to add the insurer as a party defendant under section 27–7–2. For reasons never adequately explained, plaintiff did not try to serve process upon the insurer until March 1988.

**5.** The rule provides in pertinent part:

For good cause shown the court may set aside an entry of default....

Fed.R.Civ.P. 55(c). We deal only with the failure to set aside the entry of default, for it constituted the error in this case. Plaintiff's remonstrances anent the ensuing default judgment, and the manner in which it was wrought, need not be addressed.

"Good cause" is a mutable standard, varying from situation to situation. It is likewise a liberal one—but not so elastic as to be devoid of substance. It derives its shape both contextually and in comparison with the more rigorous standard applicable to attempts to vacate judgments under Fed.R.Civ.P. 60(b); the "good cause" threshold for Rule 55(c) relief is lower, ergo more easily overcome, than that which obtains under Rule 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.1981); *Phillips*, 103 F.R.D. at 179. Thus, notwithstanding the deference due to this—as other—discretionary decisions, *see Marziliano*, 728 F.2d at 156, a reviewing tribunal should not stay its hand if the district court errs by reading "good cause" too grudgingly. *See United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir.1985). Nor does "[a]n abuse of discretion need [to] be glaring to justify reversal...." *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373–74 (D.C.Cir.1980).

Allowing an entry of default to be set aside on a showing of reasonable justification is in keeping both with the philosophy that actions should ordinarily be resolved on their merits, *One Parcel*, 763 F.2d at 183; *Meehan*, 652 F.2d at 277; *American & Foreign Ins. Ass'n v. Commercial Ins. Co.*, 575 F.2d 980, 982 (1st Cir.1978); *147 Division St.*, 682 F.Supp. at 697, and with the command of the Civil Rules themselves. *See* Fed.R.Civ.P. 1 (rules "shall be construed to secure the just ... determination of every action"). These policy considerations, we suggest, are at their zenith in the Rule 55(c) milieu. Early in the case, as when a default has been entered but no judgment proven, a liberal approach is least likely to cause unfair prejudice to the nonmovant or to discommode the court's calendar. *Cf. Phillips*, 103 F.R.D. at 179 (liberality justified under Rule 55(c) because entry of default a clerical act and not a final judgment). In these circumstances, a district court should resolve doubts in favor of a party seeking relief from the entry of a default. *Gross v. Stereo Component Systems*, 700 F.2d 120, 122 (3d Cir.1983); *147 Division St.*, 682 F.Supp. at 697.

### III

In that spirit, then, we proceed to analyze the quantum and quality of appellant's "cause" to see if it was "good," that is, if it warranted removal of an entry of default. We do not venture to set forth any precise formula, because we recognize that each case must necessarily turn on its own unique circumstances. Nonetheless, some general guidelines seem to us to have fairly universal application. We agree with the Fifth Circuit, for example, that: "In determining whether to set aside a default decree, the district court should consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *One Parcel*, 763 F.2d at 183; *accord One Urban Lot*, at 429 (citing treatise); *Marziliano*, 728 F.2d at 156 (citing further authority); *Meehan*, 652 F.2d at 277; *cf. Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir.1982) (similar; removal of default judgment). That compendium is by no means exclusive; a court may also examine into such things as the proffered explanation for the default, the good faith of the parties, the amount of money involved, and the timing of the motion. *See, e.g., Phillips*, 103 F.R.D. at 179.

In this instance, the district court decided the motion from the bench and made very few findings. Be that as it may, an inference of willfulness on Grenier's part seems unsupportable. He asserts that he did not learn of the pendency of this action until after the clerk entered the default (and shortly before filing his motion). This assertion is not contradicted either directly or circumstantially. Despite plaintiff's free-floating insinuations, the record contains nothing indicating that Grenier purposely withheld his address, deliberately tried to conceal his whereabouts, or consciously sought to evade process. Defendant's explanation—which is simply that he moved—is a plausible one. To be sure, he should have changed his address on the RMV's records—but in this case, nothing

suggests that the district court felt such failure was deliberate as opposed to merely negligent. Indeed, the court appears to have accepted Grenier's explanation, "of the fact that he didn't know" of the suit or of the requirement that he notify the RMV of his address change. *See* Transcript of June 8, 1988 Hearing (TH) at 12. The failure to file a motor vehicle form, standing alone, hardly seems a sufficient basis for inferring evasion of process, especially since the relevant state statute, R.I.Gen. Laws § 31–3–34, quoted *supra* note 3, was apparently not designed to facilitate service of process.[6] The other record evidence which bears upon defendant's intention likewise intimates no motive to evade: Grenier was insured; and he did file a change-of-address form with the post office when he moved, *see supra* note 2.

The district court did not discuss the question of prejudice, but we are at a loss to deduce how any might exist. While Coon asserts that his case is "now compromised due to the inordinate passage of time since the accident ...," Appellee's Brief at 13, the lament is altogether conclusory. Plaintiff does not claim that witnesses have died, that memories have dimmed beyond refreshment, that some discovery scheme has been thwarted, or that evidence has been lost. We will not infer prejudice merely from the passage of the amount of time involved here—especially in a case like this one, where plaintiff was apparently content to wait for close to a year and a half before instituting suit, and then waited for over another full year between effecting substituted service and requesting entry of default. *See Keegel*, 627 F.2d at 374 ("[t]hat setting aside the default would delay satisfaction of plaintiffs' claim" is insufficient to show prejudice); *cf. One Parcel*, 763 F.2d at 183 (simply requiring a party to litigate the action does not amount to prejudice); *Robinson v. Griffith*, 108 F.R.D. 152, 156 (W.D.La.1985) (similar).

On the third furculum, we note that Grenier did file a separate affidavit of meritorious defense.[7] Although it can be argued that the affidavit comprises a somewhat slender reed—Coon, after all, was merely a passenger, and Grenier, by his own admission, essayed a left turn in front of oncoming traffic—plaintiff filed no counter affidavits. The "meritorious defense" component of the test for setting aside a default does not go so far as to require that the movant demonstrate a likelihood of success on the merits. Rather, a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense. *See Keegel*, 627 F.2d at 374; *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir.1969) (per curiam); *Robinson*, 108 F.R.D. at 155; *cf. One Urban Lot*, at 430–431. Grenier's affidavit clears this squatty hurdle.

While these three factors—all of which lean in favor of appellant—comprise the indicia employed by most courts, they do not exhaust the possibilities. Yet the other indicators which we can glean from the record point in much the same direction. Only money damages are sought, and under applicable substantive law, whether Rhode Island or Massachusetts, plaintiff will be entitled to receive prejudgment interest on any favorable verdict. *See* R.I. Gen.Laws § 9–21–10 (Supp.1988) (interest allowed "from the date the cause of action accrued"); Mass.Gen.L. ch. 231, § 6B (1985) (interest allowed "from the date of commencement of the action"). Since the interest clock was running from, at least, the date Coon sued, the plaintiff will, in terms of the time value of money, be made whole notwithstanding delay. Furthermore, to the extent that timing plays a role, two circumstances counsel leniency: on the one hand, plaintiff appears to have set a leisurely pace in filing suit and pressing his claim; on the other hand, Grenier moved to

---

6. To our knowledge, no Rhode Island court has ever found breach of this statute to warrant entry of a default judgment, or suggested that the statute's dominant purpose relates to service of process. Its juxtaposition with other state laws suggests the contrary: that its objective is to ease the administrative burdens of the RMV.

7. The district court apparently chose not to consider the existence *vel non* of a meritorious defense. At least, the court did not allude to the subject.

vacate the default immediately upon learning of the action.

We take care not to paint too one-sided a picture. The other pan of the scale was not entirely empty. Coon tried in good faith to locate and serve the defendant; and as the district court sagaciously observed, "[p]laintiffs are not required to pursue heroic measures" in attempting to effectuate service of process. TH at 12. Plaintiff's counsel at one point wrote to Grenier's insurer, seeking Grenier's address, but to no avail. Moreover, Grenier should indubitably have updated his RMV listing. These factors favor appellee. Fairly weighed, however, they do not seem to overbalance the desirability of having this case decided on the merits.

## IV

We have recently expounded the test for abuse of discretion:

Judicial discretion is necessarily broad— but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Independent Oil and Chemical Workers v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988); *see also, In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1019 (1st Cir.1988); *United States v. Hastings*, 847 F.2d 920, 924 (1st Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). Here, the district court seems to have considered plaintiff's good faith, and defendant's failure to apprise the RMV of his current address—nothing more. The court disregarded—or at least declined to make findings upon[8]—several factors deserving of significant weight, *e.g.,* that Grenier's default was not willful, that Coon would suffer no cognizable prejudice by removal of the default, that appellant had proffered

a prima facie defense on the merits, and that the substituted service—howsoever well intended—was not calculated to provide real notice,[9] and in fact provided none. In failing to consider these other, offsetting factors, the district court, we think, abused its discretion.

We need not belabor the point. We do note that, under analogous circumstances, the Fifth Circuit has reached the same conclusion. In *One Parcel,* the government, seeking to seize certain property, mailed notices of levy to persons other than the true owner. The true owner was never notified. The government also posted notice at the property (which was unoccupied) and published a similar bulletin in a local newspaper. When the owner eventually learned of the proceedings, she moved for leave to file a claim out of time. The district court demurred. "Interpreting [the owner's] motion ... as a motion to set aside an entry of default under Fed.R.Civ. P. 55 ...," *id.* at 183, the Fifth Circuit reversed. The panel noted the lack of any willfulness, *id.;* the fact that the owner attempted to take corrective action as soon as she learned of the proceeding, *id.;* the absence of prejudice, *id.;* and the fact that, albeit "obtusely," the outline of a meritorious defense could be discerned, *id.* at 183– 84. The court concluded:

In sum, on the record before us, the default was not willful, the [adverse party] will not be prejudiced if the default decree is set aside, and [the movant] alleges a meritorious defense. Therefore, because there is no reason to deny [movant] a chance to assert her claim, it was an abuse of discretion to refuse to set aside the decree.

763 F.2d at 184. The case before us, we believe, is cut from much the same cloth. *See also One Urban Lot,* at 430 (district court abused its discretion in not allowing removal of default where party had a tenable excuse and an arguably meritorious defense, and prejudice was lacking).

---

**8.** The absence of findings sufficient to indicate that proper criteria were considered in refusing to set aside a default may itself cause reversal on appeal. *See Keegel,* 627 F.2d at 374. We choose not to decide this case on such a circumscribed basis.

**9.** Notice by tacking, at an address known to have been abandoned by the party in interest, and a certified mailing to that same address, seem little gaited to providing actual notice to a defendant that suit has been brought against him.

V

We need go no further. In a close case, doubts should be resolved in favor of adjudicating contested claims on the merits. The district court erred in denying appellant's motion to set aside the entry of default. The cause is therefore remanded with directions to vacate the default judgment, remove the default, and permit the action to proceed in the normal course; conditioned, however, on defendant's payment of $900 to plaintiff to offset what we estimate to be plaintiff's reasonable fees and costs incurred in securing the entry of default and the default judgment. *See Littlefield v. Walt Flanagan and Co.*, 498 F.2d 1133, 1136 (10th Cir.1974) ("imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer"); *Wilcox v. Triple D Corp.*, 78 F.R.D. 5, 7 (E.D.Va.1978) (conditioning vacatur of default on payment to plaintiff "for its trouble, costs and expense in pressing its rightful claim to a default").

REVERSED AND REMANDED. No costs on appeal.