## In re William ZEITLER.

### Leila ZEITLER, Plaintiff/Appellee,

v.

### William ZEITLER, Defendant/Appellant.

### BAP No. MB 97–106.

United States Bankruptcy Appellate Panel of the First Circuit.

July 2, 1998.

Arthur Cappellano, Boston, MA, on brief for Appellant.

Melvin S. Hoffman, Pamela A. Harbeson, Boston, MA, on brief for Appellee.

Before GOODMAN, HAINES, and CARLO, U.S. Bankruptcy Judges.

HAINES, Bankruptcy Judge.

William Zeitler, Chapter 7 debtor, appeals entry of three unfavorable orders by the bankruptcy court flowing from his failure to appear at a pre-trial conference in an adversary proceeding brought by his former spouse, Leila Zeitler. Because the record does not reveal the basis of the court's decision, we remand.

## Background

William petitioned for Chapter 13 relief on September 12, 1996, and converted to Chapter 7 on March 6, 1997. Leila initiated an adversary proceeding on June 13, 1997, seeking a determination that William's obligations to her, arising from an August 17, 1994, divorce decree and a September 19, 1996, separation agreement, are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(5) and (15).

A pre-trial conference convened on July 30, 1997; a further pre-trial conference was scheduled for September 10, 1997.

**Default**

William's attorney failed to appear at the September 10, 1997, conference. Then and there, the court defaulted William and entered judgment for Leila. The "Proceeding Memorandum/Order of the Court" noted "No appearance" of "counsel for debtor/defendant" and stated: "Debtor is defaulted. Debt held nondischargeable."

Five days later, on September 15, 1997, William's counsel moved to set aside the default. He explained that his failure to appear was the result of a medical condition, arguing that this constituted excusable neglect, and, thus, "good cause" existed for setting aside the default judgment. William's supporting memorandum included citation to Federal Rules of Civil Procedure 16, 55(c), and 60(b), as well as to case law authorities. Counsel's attached affidavit averred that he was "taken ill and confined to [his] bed at home and was unable to appear at the conference." He stated that his "disability is well documented and very visible in his appearance."

Leila objected to the motion to set aside the default, asserting that William's motion was procedurally and substantively "improper." She made three arguments.[1] First, she asserted that William's reliance on Rule 55 was misplaced because that rule applies only to orders of default entered for pleading failures and the court's default judgment against William was entered for other reasons. Second, she argued that entry of default was within the court's discretion. Third, she contended that if William's motion were considered as a motion to vacate or set aside judgment,[2] it could not carry the day because William's attorney's affidavit lacked "any explanation of why counsel failed to notify the Court of such illness, by telephone or otherwise. In the absence of such notification, the judgment entered by the court is entirely appropriate." Leila further observed, in a footnote, that counsel's affidavit averred that he was confined to bed on September 9, not September 10, the date of the pre-trial conference.

A hearing on William's motion for relief was scheduled, but never held. Two days before the hearing date the court denied the motion. The record discloses no reason why a hearing was forgone. The docket entry for October 7, states merely: "Hearing Not Held." The court's order simply states: "Defendant's motion to remove the default is denied for the reasons set forth in the plaintiff's opposition."

Within a week, William's counsel filed a "Motion for Reconsideration" of the order denying his motion for relief. He pointed out that, in addition to relying on Rule 55, he had also invoked Rule 60(b); asserted that prior to missing the pre-trial conference he had been cooperative and attentive; offered

to present documentation of his medical condition to refute opposing counsel's aspersions of fabrication; and, without much structure, argued that the facts demonstrated "good cause" for setting aside the judgment.[3]

Again, Leila objected. Her memorandum pointed out that William's counsel had yet to explain his nonattendance at the September 10, 1997, conference or why he did not contact her or the court in advance to notify them of his inability attend. She also contested Rule 60(b)'s applicability.

A hearing on the motion to reconsider the October 8, 1997, order was scheduled for November 6, 1997. Once again the hearing was not held. One day before the hearing date the court denied William's motion, stating simply: "*See In re Wedgestone Financial,* 142 B.R. 7 (Bankr.D.Mass.1992)." [4]

### Discussion

William asks that we reverse the bankruptcy court's entry of default and default judgment, its order denying his motion to set aside the default and judgment, and its order denying his motion for reconsideration.

### Jurisdiction

 The Bankruptcy Appellate Panel has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. *See e.g., Schiff v. Rhode Island,* 199 B.R. 438, 440 (D.R.I.1996). A default judgment is a final order, ripe for our review. *See id.; see also Citibank N.A. v. Lee (In re Lee),* 186 B.R. 695, 697 (9th Cir. BAP 1995) (though order denying default is usually not final, it may be final if it implicitly grants judgment for the nonmoving party in a manner that terminates the underlying litigation).

---

1. We take pains to thoroughly summarize Leila's arguments. They take on considerable significance because the bankruptcy court expressly based its denial of William's motion for relief on the arguments proffered by Leila.

2. Leila's memorandum cited Fed.R.Bankr.P. 9023, which adopts Fed.R.Civ.P. 59. The reference was mistaken. She must have intended reference to Fed.R.Bankr.P. 9024, adopting Fed. R.Civ.P. 60.

3. Counsel also offered to expedite presentation of the merits by agreeing to submit the discharge-

ability dispute for decision via summary judgment.

4. *In re Wedgestone Fin,* succinctly elucidate's the court's standard regarding motions to reconsider: "To succeed on a motion to reconsider, the Court requires that the moving party show newly discovered evidence or a manifest error of fact or law." 142 B.R. 7, 8 (Bankr.D.Mass.1992). In that case, Judge Hillman observes that, "[a] motion for reconsideration is not a means by which parties can rehash previously made arguments." *Id.*

## Standard of Review

■ We review the court's orders for abuse of discretion. *See Schiff,* 199 B.R. at 440–41; *Schnell v. Schnell (In re Schnell),* 148 B.R. 365, 366 (D.Mass.1992). The First Circuit has articulated abuse of discretion review as follows:

> Judicial discretion is necessarily broad— but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg., Co.,* 864 F.2d 927, 929 (1st Cir.1988) (decision to grant or deny preliminary injunction); *accord Coon v. Grenier,* 867 F.2d 73, 78 (1st Cir.1989); *Schiff,* 199 B.R. at 441.

■ In the case before us our deference to the bankruptcy court's discretionary action is circumscribed by judicial disfavor for the entry of default judgment and a preference for disposing of cases on their merits. *See e.g., Keegel v. Key West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 373–74 (D.C.Cir.1980) ("An abuse of discretion need not be glaring to justify reversal, modern federal procedure favoring trials on the merits."); *Affanato v. Merrill Bros.,* 547 F.2d 138, 140 (1st Cir. 1977) (describing default judgment as a drastic sanction that should be used reluctantly in light of policy in favor of disposing of cases on the merits); *In re Schnell,* 148 B.R. at 366 ("The power to grant a default judgment is within the broad discretion of the trial court; however, default judgments are generally disfavored, and cases should be tried on their merits whenever possible."); *Golden Ark Enters. v. Utsick (In re Utsick),* 37 B.R. 704,

705 (Bankr.D.Me.1983) (noting that default judgments "are not favored in the law"); *accord Dierschke v. O'Cheskey (In re Dierschke),* 975 F.2d 181, 183 (5th Cir.1992).

It is the appellant's burden to persuade us the bankruptcy court erred. *See Jones v. Winnepesaukee Realty,* 990 F.2d 1, 5 (1st Cir.1993).

## Disposition

To determine whether the bankruptcy court ignored, improperly relied upon, or made a serious mistake in weighing a material factor, we must consider exactly what factors the court should have considered when it entered default judgment or when it denied William's motion to set it aside. *See Schiff,* 199 B.R. at 441.

The bankruptcy court entered default and default judgment in one fell swoop. As explained below, we may address the propriety of that action, as well as its denial of William's motion to set aside the default judgment as one unit. *See Schiff,* 199 B.R. at 441. Our conclusion on that score obviates the need to address William's appeal of the court's order denying his motion for reconsideration.

■ Our approach to William's appeal is guided by *Schiff.* In that case the district court reviewed the bankruptcy court's entry of default judgment for an adversary proceeding defendant's failure to answer. Although our case involves a failure to appear at a scheduled pre-trial conference, rather than a failure to plead, we do not agree with Leila that the difference is material to our determination of what factors the court below should have considered in entering the default judgment and in ruling on William's motion to set it aside.[5]

---

**5.** Leila argues that there is a significant difference between a default judgment flowing from failure to plead, governed by Rule 55, and one resulting from a failure to appear at a pre-trial conference, governed by Rules 16 and 37. (Pl.'s Obj. Mot. Set Aside at 1–2; Appellee Brief at 6.) Pursuant to Fed.R.Civ.P. 16(f), "[i]f a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference" the judge, *sua sponte* or on a party's motion, "may make such orders with regard thereto as

are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)." Fed. R.Civ.P. 16(f). Rules 37(b)(2)(B), (C), (D) permit the entry of orders prohibiting the support or opposition of claims or defenses or the introduction of certain evidence, *see id.* 37(b)(2)(B); striking pleadings in part or in whole, staying proceedings, dismissing the action or proceeding in its entirety or in part, "or rendering a judgment by default against the disobedient party," *id.* (C); and/or issuing a contempt of court order. *See id.* (D).

■ The factors properly considered in determining the appropriateness of entering default judgment do not vary according to the nature of the default. They are, by design, touchstones to be consulted and applied to the unique facts of each case. *See Coon,* 867 F.2d at 76. We agree with *Schiff* that there is no meaningful distinction between the factors appropriately considered in entering default judgment and those considered in ruling on a motion to set aside such a judgment.

Ascribing "inherent logic" to its approach, the *Schiff* court concluded that, just as he or she would in ruling on a motion to set aside, "a trial judge should consider [the "good cause" factors of Rule 55(c) ] in deciding whether to grant a motion for entry of default and to enter a default judgment." 199 B.R. at 442. *See also In re Schnell,* 148 B.R. at 366 (using the elements of a "good cause" review in analyzing whether the trial court abused its discretion in entering a default judgment).[6]

■ Thus, our review of the trial court's orders is governed by the "good cause" standard of Rule 55(c). Fed.R.Civ.P. 55(c) ("For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."); Fed. R.Bankr.P. 7055 (making Fed.R.Civ.P. 55 applicable to adversary proceedings).

■ Although there can be no immutable, "precise formula," some "fairly universal" "general guidelines" have evolved. *Coon,* 867 F.2d at 76. *Accord Schiff,* 199 B.R. at 441. In denying William's motion to set aside the default judgment, the trial court should have considered, at a minimum, (1) whether his default was willful, (2) if setting aside the default would prejudice Leila, and/or (3) the merits of William's defense. *See Coon,* 867 F.2d at 76; *Schiff,* 199 B.R. at 441–42; *In re Schnell,* 148 B.R. at 366. This list is not exclusive: other factors that might be considered include "the proffered explanation for the default, the good faith of the parties, the amount of money involved, and the timing of the motion." *Coon,* 867 F.2d at 76. *Accord Schiff,* 199 B.R. at 442. *See also In re Dierschke,* 975 F.2d at 183–84 (describing trio of good cause factors as disjunctive and "not talismanic," citing public interest implications, the extent of the financial loss to the defendant, and expeditiousness of the defendant in correcting the default).

In *Schiff* the district court considered a bankruptcy court order that stated only:

Heard on November 8, 1995, on Plaintiff's Motion for Entry of Default, and the Defendant's Objection thereto. For the reasons argued by the Plaintiff and contained in its memorandum, which we adopt and incorporate herein by reference, the Motion for Entry of Default is GRANTED. Plaintiff's contention that this Court lost jurisdiction over the adversary proceeding

6. The reasoning of *Schiff* supports our approach and undercuts Leila's arguments that William relied on the wrong rules and standards in pressing his motion to set aside the default. (Pl.'s Obj. Mot. Set Aside at 1–2; Pl.'s Obj. Mot. Recons. at 3; Appellee Brief at 7–9.) The *Schiff* court observed that the factors that a trial court ought consider in entering a default judgment had not been clearly elucidated in the First Circuit. 199 B.R. at 441. It determined that it was appropriate for the reviewing court to examine the factors that should be considered in ruling on a motion to set aside a default. The court reasoned:

A trial court's determination of whether to set aside an entry of default is inherently similar to the court's initial determination whether to grant an entry of default and to enter a default judgment in the first place. After all, the fundamental, underlying question is the same: do the circumstances justify resolution of the case on the basis of one party's failure to plead or

defend, rather than on the merits of the case? As a result, logic dictates that the same factors that should be considered when making a determination under the "good cause" standard of Rule 55(c) similarly should be considered when ruling on a party's initial motion for entry of default and when deciding whether to enter a default judgment.

*Id. See also cf. In re Dierschke,* 975 F.2d at 184 ("[W]hile courts apply essentially the same standard to motions to set aside a default and a judgment by default, the former is more readily granted than a motion to set aside a default judgment."). We note that there is one factor which, although pertinent to a motion seeking relief from default or default judgment, would not be considered in connection with entry of such an order: the expeditiousness with which a motion for relief is filed. *See In re Dierschke,* 975 F.2d at 184–85; *Coon,* 867 F.2d at 77–78; *Schiff,* 199 B.R. at 442.

because she filed an untimely interlocutory appeal is without merit, and the objection is overruled. *See In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 691 (7th Cir. 1992).

199 B.R. at 442. The district court concluded that although the bankruptcy court's order contained "procedural background information" and the assertion that the motion was untimely, it did not contain the requisite discussion of whether the objecting party's mistake was willful, whether the opposing party was prejudiced, or whether defendant/objecting party had a meritorious defense. *Id.* Unable to determine on the record before it whether the bankruptcy court had abused its discretion, the court remanded. *See id.*

■ We take the same approach. Although we have more information before us than did the district court in *Schiff*, there is no record upon which we can determine whether the court below considered the appropriate factors in defaulting William and entering judgment against him [7] and, later, in refusing to grant relief from the default judgment.[8] Without further explication by the court, we cannot ascertain whether the judge determined that William's attorney's failure to appear was willful, that his defense to the dischargeability complaint lacked merit, or that Leila had been (or would be) unfairly prejudiced. Nor can we determine if the court took into consideration any other appropriate factor(s) in its decisions.[9]

In his motion to set aside the default judgment, William represented that he was attentive to all his prior responsibilities in connection with the adversary proceeding. (Def.'s

Mot. Set Aside at 1; Def.'s Mot. Recons. at 1–2.) At no point did Leila contradict this representation of diligence. We would expect that such a record of prior conduct would have some bearing on the severity of the sanction entered for non-appearance at the pretrial conference. Again, however, the record before us is insufficiently informative to allow a determination of whether the court below abused its discretion. We do not have the benefit of the judge's assessment of whether William's counsel's failure to appear was an "isolated oversight" that "should not be penalized by a default judgment," or if "the conduct here went well beyond ordinary negligence, and that final default was appropriate." *Affanato*, 547 F.2d at 141 (affirming default).

### *Conclusion*

We recognize that trial courts have heavy calendars and that, rightfully, trial judges should not indulge slothfulness or dilatory or obstructive conduct. Neither should they be required to assemble an exhaustive record to support sanctions reasonably imposed in the face of such conduct.

Nevertheless, when sanctions are imposed—particularly a default judgment, the severest of sanctions—the propriety of their imposition escapes informed review unless there exists some record demonstrating that the judge's action was fairly considered in light of pertinent principles. We are without such a record here.

Accordingly, we REMAND this matter to the bankruptcy court so that the judge may set forth the reasons for his entry of default judgment and for refusing to set aside that

---

7. With respect to the entry of default judgment, the order includes the notation of no appearance by "counsel for debtor/defendant" and the statement that "Debtor is defaulted. Debt held non-dischargeable."

8. As to the motion to set aside the default judgment, the court entered an order indicating only: "Defendant's motion to remove the default is denied for the reasons set forth in the plaintiff's opposition." Plaintiff's [Leila's] "reasons" opposing the motion cite only the motion's assertedly improper reliance on Rule 55 (accompanied by Leila's own, inaccurate citation to the Bankruptcy Rules), a conclusory assertion that the court had acted within its discretion, and a com-

plaint that William's counsel had failed to notify the court of his incapacity before the conference.

9. There is no record evidence of how the court viewed counsel's proffered explanation of ill health; no conclusion regarding William's good or bad faith; and no indication that the court considered the amount of money at stake. Such factors, as well as others about which we have insufficient information to opine, might well have been taken into account by the court. *See e.g., Coon*, 867 F.2d at 76; *Schiff*, 199 B.R. at 442. The record does attest to William's prompt and forceful response to the default judgment.

judgment in light of the appropriate factors.[10] Of course, should he consider it appropriate, he will be free to reconsider his actions and modify the orders that are the subject of the appeal. This appeal will be closed so that the lower court may fully exercise its jurisdiction on remand.

So Ordered.

---

**10.** Though reversal of the entry of default at this stage could be contemplated, see *Coon,* 867 F.2d at 78 n. 8 ("The absence of findings sufficient to indicate the proper criteria were considered in refusing to set aside a default may itself cause reversal on appeal."); *Keegel* 627 F.2d at 374 ("Consideration of the listed criteria is not reflected in the district court's memorandum. Absence of record indication that proper standards were applied in refusing to set aside a default has been held sufficient in itself to warrant reversal."), such a determination would be inappropriate here. In *Coon,* the court attempted to infer willfulness and deduce prejudice from the "few findings" from the bench, and, not satisfied, reversed the trial court's denial of a motion to set aside a default judgment. See 867 F.2d at 76–77. Rather than embarking on such an exercise, we conclude that the better course is to remand so the bankruptcy judge may flesh out the record.