[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14766
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-00211-RBD-KRS


EARLTON FARQUHARSON,
BEULAH FARQUHARSON,

                                        Plaintiffs - Appellants,

versus

CITIBANK, N.A.,
for the Benefit of the Certificate Holders,
CWABS, Inc.
Assetbacked Certificates, Series 2007-QX1,
BANK OF AMERICA, N.A.,
NATIONSTAR MORTGAGE, LLC,
WILMINGTON TRUST,
RONALD R. ROLFE AND ASSOCIATES, P.L.,
Attorneys at Law and as Successor Trustee to
Florida Default Law Group, P.L., et al.,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 31, 2016)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

## I.  INTRODUCTION

*Pro se* Plaintiffs, Earlton and Beulah Farquharson, filed the operative

Amended Complaint in the Middle District of Florida, asserting various state law

claims and a Fair Debt Collection Practices Act (FDCPA) claim against a slew of

different Defendants.  For purposes of this Opinion, the defendants fall into the

following groups:  Bank of America Defendants (referred to collectively as "Bank

of America"), Citigroup Defendants (referred to collectively as "Citigroup"),

Nationstar Mortgage ("Nationstar"), and Ronald R. Wolfe and Associates

("Wolfe").

Plaintiffs' claims arise out of a defaulted mortgage loan secured against their

Florida home.  In 2008, Plaintiffs defaulted on this loan and sought a loan

modification in order to prevent foreclosure.  Plaintiffs contend that they

continuously provided their loan servicer, Bank of America, with all of the

2

requested documentation and information, but were never approved for a loan modification.

Some five years after Plaintiffs' default, in October of 2013, Bank of America sent them a loan modification letter outlining a new loan modification program that Bank of America had recently introduced as part of a national settlement with the Department of Justice and State Attorneys general.  To enroll in this loan modification, Plaintiffs had to make three timely payments of $704.12 by 11/1/2013, 12/1/2013, and 1/1/2014.  The letter further specified that once Plaintiffs made their first such Payment, Bank of America would not proceed with a foreclosure of Plaintiffs' property.  Plaintiffs made two timely loan payments, but before the third payment was submitted, Plaintiffs' loan servicing was transferred from Bank of America to Morningstar Mortgage.  When Bank of America received Plaintiffs' third check under the modification plan, it forwarded it to Morningstar, who returned it to Plaintiffs, stating that the check was insufficient to bring Plaintiffs account current.  Meanwhile, Citigroup had attempted to initiate a number of foreclosure proceedings, allegedly in violation of the loan modification letter.  Ronald Wolfe and Associates represented Citigroup's interests in these proceedings.

Initially, all defendants except Citigroup filed a Motion to Dismiss Plaintiffs' Amended Complaint; Citigroup filed nothing.  Responding to

Citigroup's inaction, Plaintiffs moved the clerk for an entry of default against Citigroup, which the clerk entered soon after.  Counsel for Citigroup then entered its appearance and filed a Motion to Vacate Default.  After considering the various motions and briefs of the parties, the district court granted Citigroup's motion to vacate default and also granted the various Defendants' motions to dismiss, without prejudice to amend.  However, rather than amending their Complaint, Plaintiffs appealed the Orders to this Court.[1]

Plaintiffs were within their rights to appeal the Order dismissing their Amended Complaint rather than to amend it, as the district court authorized them to do.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 (11th Cir. 2006); *Schuurman v. Motor Vessel "Betty K V"*, 798 F.2d 442, 445 (11th Cir. 1986).  However, by filing an appeal—instead of taking advantage of the district court's invitation to amend—Plaintiffs waived any right to further amendment.  *Garfield*, 466 F.3d at 1260; *Schuurman*, 798 F.2d at 445 ("Once the plaintiff chooses to appeal before the expiration of time allowed for amendment, however, the plaintiff

---

[1]  In their Amended Notice of Appeal, Plaintiffs also purport to appeal three other Orders of the district court—an Order denying Plaintiffs' motion for sanctions, an Order denying as moot *Wolfe's* motion to strike responses, and an Order striking an unauthorized reply.  Previously, this Court determined that it did not have jurisdiction to review the Order denying Wolfe's motion to strike responses.  The other Orders are not addressed in Plaintiffs brief and are therefore waived. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014); *see also Timson v. Sampson,* 518 F.3d 870, 874 (11th Cir. 2008) (noting that the same rule applies to *pro se* plaintiffs).  At any rate, it is clear from Plaintiffs' briefing that they are primarily concerned with (1) the district court's decision to dismiss their Amended Complaint and (2) the district court's decision to vacate the entry of default.  Those two issues are addressed here.

waives the right to later amend the complaint, even if the time to amend has not yet expired.").

## II. Vacating an Order of Default

First, we address the district court's decision to vacate the clerk's entry of default against Citigroup.  We review a decision to vacate an entry of default for an abuse of discretion.  *Gibbs v. Air Canada*, 810 F.2d 1529, 1537 (11th Cir. 1987).

Under Federal Rule of Civil Procedure 55, when a defendant fails to "plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  However, the court itself may later "set aside an entry of default for good cause."[2]  Fed. R. Civ. P. 55(c); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1331 (11th Cir. 2014) ("Rule 55's standard of 'good cause' for setting aside an entry of default judgment—not the higher one of 'excusable neglect' applicable to missed deadlines outside the default context—governs the court's determination of whether, despite her one-time error in not responding to a pleading, the non-moving party should get the opportunity to have her case considered on the merits before final judgment against her is

---

[2]  Of note, the district court analyzed this issue under the more exacting "excusable neglect" standard of Rule 60(b).  It did not need to do so.  Rule 55(c) provides that "[t]he court may set aside an entry of default for <u>good cause</u>, and it may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ P. 55(c) (emphasis added).  Since only a clerk's entry of default (rather than a final default judgment) was filed in this case, the less exacting "good cause" standard applies.  *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1331 (11th Cir. 2014); *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990) (noting that the "excusable neglect" standard is "more rigorous" than the "good cause" standard).

entered."). "Good cause" does not have a precise definition or description; nor should it. Instead, it is a context-dependent determination to be made by a district court, and a court's assessment will depend on the particular facts. *See Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) ("It is also a liberal [standard]—but not so elastic as to be devoid of substance.") (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)). In doing so, courts will typically assess "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Id.*

The district court examined those three factors here and concluded that (1) Citigroup's failure to respond was not willful because it took immediate action and promptly retained counsel as soon as it realized that there had been a misunderstanding regarding its representation, (2) vacating the defaults would result in little to no prejudice because the case was still in the very early stages of litigation, and (3) Citigroup asserted a number of colorable defenses to the Amended Complaint, including the 12(b)(6) defenses addressed below. We agree with the district court's conclusions. Further, "we have a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible." *Perez*, 774 F.3d at 1332. As such, the district court did not abuse its discretion by vacating the clerk's entry of default.

### III.  Dismissing Plaintiffs' Amended Complaint

The district court dismissed Plaintiffs' only federal claim and declined to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims. Because it is important for Plaintiffs to understand what claims of wrongdoing the district court did and did not address, for purposes of going forward with any remaining claims, we provide a brief tutorial to Plaintiffs on the parameters of federal jurisdiction.

Federal courts are courts of "limited jurisdiction."  That means that not every claim can be heard by a federal court.  Instead, a federal court can only hear a claim if it falls into certain categories of claims established by the United States Congress.  The two primary categories for civil cases like this one are "diversity jurisdiction," and "federal question jurisdiction."  Thus, for Plaintiffs to be able to bring a case in federal court, their claims must fit into one of these two categories.

As to diversity jurisdiction, under 28 U.S.C. § 1332, a federal court has diversity jurisdiction over a civil action if the plaintiffs and defendants are citizens of different States and the amount in controversy (that is, the amount that the plaintiff hopes to recover from the case) is greater than $75,000.  The Supreme Court has clarified that a federal court can only hear a case under diversity jurisdiction if *every* plaintiff is from a different state than *every* defendant. *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806); *Vermeulen v. Renault, U.S.A., Inc.*,

985 F.2d 1534, 1542 (11th Cir. 1993).  In other words, if there are multiple defendants, a federal court may only hear a case under diversity jurisdiction if the plaintiff's state is different from that of *every* other defendant.  This is called "complete diversity."

In this case, there was not complete diversity when the case was filed because the Plaintiffs were citizens of the same state as one of the Defendants, Ronald R. Wolfe & Associates, P.L.  Plaintiffs point out in their Reply Brief that Ronald R. Wolfe & Associates was acquired by another law firm, Brock & Scott PLLC, after Plaintiffs originally filed their case.  However, this post-filing occurrence does not affect the district court's jurisdiction.  A federal court's diversity jurisdiction depends on whether there was diversity at the time the action was filed.  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).  This is called the "time-of-filing" rule.  Because Plaintiffs were citizens of the same state as one of the defendants at the "time-of-filing," the district court could not hear this case under its diversity jurisdiction.

Thus, for the district court to have jurisdiction over Plaintiffs' claims, the district court would need to have "federal question jurisdiction" over at least one of the claims.  Under 28 U.S.C. § 1331, a federal court has federal question jurisdiction over a claim only if the claim arises from the laws of the United States of America, as opposed to the laws of one of the States.  *Am. Well Works Co. v.*

*Layne & Bowler Co.*, 241 U.S. 257, 259 (1916).  Moreover, it does not matter that similar factual situations may have been litigated in federal court before or that the federal court might have more familiarity with the issues than a state court. Instead, the claim *must* involve the resolution of an issue of federal law.  *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 311 (2005).

Once a plaintiff shows that at least one of its claims derives from a law of the United States of America, the district court may then exercise jurisdiction over any state law claims that relate to the federal claim.  28 U.S.C. § 1367.  This is called "supplemental jurisdiction."  But if all plaintiff's federal law claims are dismissed from the case, the district court can elect whether to exercise jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).  Indeed, we have noted that when a plaintiff's only federal law claims are dismissed prior to trial, dismissal of the state law claims is strongly encouraged in order to advance considerations of economy, fairness, convenience and comity.  *Baggett*, 117 F.3d at 1353 (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) and *Eubanks v. Gerwen*, 40 F.3d 1157 (11th Cir. 1994)).

Because the FDCPA is a federal law, the district court had federal question jurisdiction over Plaintiffs' Fair Debt Collection Practices Act (FDCPA) claim.

The rest of Plaintiffs' claims were state law claims, so the district court could only hear these claims under its supplemental jurisdiction. If the district court dismissed the FDCPA claim, however, it was not required to proceed on the supplemental state law claims.

And that's exactly what happened here. The district court concluded that Plaintiffs failed to state a claim for relief under the FDCPA and thus dismissed this claim, which again was the only federal claim. The district court then decided that it would not exercise supplemental jurisdiction over Plaintiff's state law claims. As noted, the court provided Plaintiffs an opportunity to amend their complaint, but instead of accepting the court's offer, Plaintiffs chose to appeal.

As to whether the district court correctly concluded that Plaintiffs' FDCPA claim should be dismissed, we review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, accepting the facts alleged in the complaint as true, and construing them in the light most favorable to the plaintiff. *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004). Having performed this analysis, we agree with the district court's decision.

The FDCPA prohibits a "debt collector" from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Thus, "in order to state a plausible FDCPA claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a

10

'debt collector' and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

Plaintiffs make clear that their FDCPA claims relate only to "the loan modification process, not the foreclosure process."[3]  Specifically, Plaintiffs assert that a loan modification letter from Bank of America was "misleading" because it overstated the amount by which the principle balance would be reduced and indicated that foreclosure would not be pursued while Plaintiffs were in the loan modification program.  Further, Plaintiffs assert that Bank of America and Nationstar falsely informed them that the submission of financial documents and three timely monthly payments was all that was necessary to effectuate the loan modification.  Finally, Plaintiffs assert that Citigroup and Wolfe falsely informed Plaintiffs that various foreclosure-related documents were to collect a debt not owed to Citigroup.

---

[3]  Our court has issued no precedent as to whether the enforcement of a mortgage through a foreclosure constitutes debt collection activity for purposes of the FDCPA.  In *Reese*, we stated, "we do not decide whether a party enforcing a security interest without demanding payment on the underlying debt is attempting to collect a debt within the meaning of § 1692e."  678 F.3d at 1218 n.3.  Defendants correctly note that some of our unpublished opinions indicate that foreclosure does not constitute debt collection activity, but those opinions do not constitute binding precedent. *See* 11th Cir. R. 36-2.

But regardless of whether foreclosure constitutes a debt collection activity, a "communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." *Reese*, 678 F.3d at 1218.  The relevant issue for FDCPA purposes is whether the communication is actually an attempt to collect a debt, irrespective of whether it *also* seeks to enforce a security interest.

First, as to Citigroup and Wolfe, Plaintiffs have failed to plead that either of these entities are "debt collectors" as defined by the FDCPA.  Under, the FDCPA, a party qualifies as a debt collector "either by using an 'instrumentality of interstate commerce or the mails' in operating a business that has the principal purpose of collecting debts or by 'regularly' attempting to collect debts."  *Reese*, 678 F.3d at 1218 (quoting 15 U.S.C. § 1692a(6)).  In their Amended Complaint, Plaintiffs assert that Citigroup and Wolfe are each "debt collectors"; however, such "threadbare recitals of a cause of action's elements" do not suffice.[4]  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[L]egal conclusions masquerading as facts will not prevent dismissal.").

Plaintiffs also assert that Citigroup attempted to initiate a number of foreclosure proceedings and that Wolfe represented Citigroup's interests in these proceedings, but neither assertion supports the proposition that either of these entities operates a business that has as a principle purpose the collection of debts or that regularly attempts to collect the debts of another.  Certainly a law firm like Wolfe or a multinational financial-services conglomerate like Citigroup *could* be a debt collector, but the Amended Complaint does not contain sufficient factual

---

[4]  Notably, Plaintiffs' assertions that "Banks violated the Fair Debt Collection Practices Act" and that "Bank[s] used false, deceptive and misleading representations in connection with collection of Plaintiffs debt from 2009-2015" are also conclusory allegations that may not be considered for purposes of stating a claim under *Iqbal*.

allegations to support such a conclusion.  *Compare Reese*, 678 F.3d at 1218–19

(holding that a law firm was a debt collector because the Complaint alleged that

the law firm "engaged in the business of collecting debts owed to others incurred

for personal, family[,] or household purposes" and "had sent to more than 500

people dunning notice[s] containing the same or substantially similar language to

[the communications at issue]" (quotations omitted)) *with Schlegel v. Wells Fargo

Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013) (holding that "the complaint fails to

provide any factual basis from which we could plausibly infer that the principal

purpose of Wells Fargo's business is debt collection" or "that Wells Fargo

regularly collects debts owed to someone other than Wells Fargo").

As to Bank of America and Nationstar, Plaintiffs' Amended Complaint

labels each entity as a "debt collector," but the Complaint, by itself, does not allege

sufficient facts to permit a court to infer that these entities (1) used "an

instrumentality of interstate commerce or the mails in operating a business that has

the principal purpose of collecting debts" or (2) "regularly attempt[ed] to collect

debts." *Reese*, 678 F.3d at 1218 (internal quotations omitted).  Nonetheless, even

had Plaintiffs sufficiently pled that Bank of America and Nationwide are "debt

13

collectors,"[5] they have failed to plead other aspects of an FDCPA claim against these two entities.

As to Bank of America, Plaintiffs failed to plead "that the challenged conduct is related to debt collection." *Reese* 678 F.3d at 1216. Plaintiffs assert that Bank of America made false and misleading representations in its letter outlining Plaintiffs' ability to opt into a Trial Period Plan loan modification program—attached as Exhibit D to Plaintiffs' First Amended Complaint. However, this letter is not "related to debt collection," which is necessary to bring it under the purview of the FDCPA.[6]

---

[5] Plaintiffs contend that because each entity sent Plaintiffs a document indicating that the sender was a debt collector (albeit no debt collection was sought by the letter) and because these documents were attached as exhibits to the complaint, Plaintiffs thereby sufficiently averred that these defendants were debt collectors. Defendants argue that an entity may call itself a debt collector even though it has not engaged in the activities necessary to render itself as such under the FDCPA. Because we conclude that Plaintiffs have otherwise failed to allege a claim under the FDCPA as to these defendants, we need not determine whether an entity's labeling of itself as a debt collector in a document means that it has actually met the statutory definition for that term.

[6] Some courts have concluded that, as a rule, loan modification communications do not constitute communications "in connection with the collection of any debt." *See, e.g., Reyes-Aguilar v. Bank of Am., N.A.*, No. 13-CV-05764-JCS, 2014 WL 2917049, at *7–8 (N.D. Cal. June 24, 2014) (holding that the FDCPA does not apply to loan modifications because such activity is "more debt servicing than debt collection"); *Marshall v. Deutsche Bank Nat'l Trust Co.*, No. 4:10CV00754-BRW, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011), *aff'd*, 445 F. App'x 900 (8th Cir. 2011) (holding that "letters regarding loan modification were attempts to restructure the debt instrument and lower the payments, not a demand for payment" and that even though these letters "ostensibly related to the collection of a debt, it would be impractical to find that loan statements must comply with the FDCPA."). We need not lay down such a blanket rule as set out in the cited cases. We simply conclude that the substance of the letter at issue compels the conclusion that the communication is not "in connection with the collection of any debt." *See Singha v. BAC Home Loans Servicing, L.P.*, 564 F. App'x 65, 71 & n.2 (5th Cir. 2014) (also refusing to announce such a rule but concluding that the communications at issue

14

When determining whether a communication is "in connection with the collection of any debt," we look to the language of the communication in question—specifically to statements that demand payment and discuss additional fees if payment is not tendered. *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014). For example, in *Reese*, we "pointed specifically to the statements in the letter that the lender demanded full and immediate payment, threatened that unless the debtors paid, attorneys' fees would be added, and stated that the law firm was attempting to collect a debt and was acting as a debt collector" when determining that the communication was an attempt to collect a debt. *Caceres*, 755 F.3d at 1302 (citing *Reese*, 678 F.3d at 1217). Likewise, in *Caceres*, the communication at issue stated "that it is 'for the purpose of collecting a debt;' it refers in two additional paragraphs to 'collection efforts;' it states that collections efforts will continue and that additional attorneys' fees and costs will accrue; it states the amount of the debt and indicates that it must be paid in certified funds; and it gives the name of the creditor and supplies the law firm's phone number in the paragraph where it talks about payments." *Id.* at 1303.

None of these indicators of collection efforts are present here. Although the letter outlined a loan modification program that Plaintiffs could accept by making

---

were "not communications in connection with *collection* of a debt"); *see also Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *13 (M.D. Fla. Aug. 16, 2016) (concluding that a "Loan Modification Package was not a communication in connection with the collection of a debt").

three timely payments under the Trial Period Plan, the letter did not demand or even request that Plaintiffs make any payments under either the Plan or the original note.  It merely offered Plaintiffs this option if they chose to make any future payments.  Further, the letter did not indicate that any punitive actions would be taken if Plaintiffs failed to make payments, nor did it describe any collection efforts apart from the Plan process itself.

Although the loan modification Plan clearly provides the Plaintiffs with an incentive to pay by offering a principal balance reduction and the ability to avoid foreclosure, the loan would stay exactly as it were if Plaintiffs chose not to participate in the plan.  *See Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998) (holding that the communication at issue was not a communication in connection with the collection of any debt because the letter "demands nothing, and doesn't even imply that anything owed under the [plaintiff's] forbearance agreement is overdue.  At most, the letter contains a warning that a failure to pay the monthly installments (in other words, a second default) will mean that the forbearance agreement becomes null and void, resulting in acceleration.").

Likewise here, even though Bank of America's letter stated that "this communication is from a debt collector" it did not state that Bank of America was trying to collect a debt (as the letter in *Reese* did, right after the "debt collector" disclosure).  Instead, right after the "debt collector" disclosure, the letter here

stated:  "However, the purpose of this communication is to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through affordable payments."  Considering the substance of the loan modification letter, it is not a communication "in connection with the collection of any debt," as that phrase is understood in this Circuit.

Finally, as to Nationstar, Plaintiffs do not actually assert that Nationstar made any misrepresentations or falsehoods in violation of the FDCPA.  Plaintiffs *do* assert that Bank of America and Nationstar "represented directly and indirectly [ ] to Plaintiffs" that the documents Plaintiffs provided to them were "the only actions Banks required of Plaintiffs" to secure the loan modification, but the exhibits belie any allegation that Nationstar made such representations.  *See F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage . . . [w]e even treat specific facts demonstrated by exhibits as overriding more generalized or conclusory statements in the complaint itself.").  Exhibit B is a Notice of Servicing Transfer informing Plaintiffs that Nationstar had taken over servicing of the loan from Bank of America, and Exhibit A is a letter from Nationstar returning Plaintiffs' third payment under the loan modification plan initiated by Bank of America.  Neither of these documents indicate that Nationstar represented to Plaintiffs that it would uphold or continue Bank of America's loan modification plan, and Plaintiffs do not identify any other communications in

which such a representation may have occurred.  While Nationstar's decision not to uphold the loan modification plan from Bank of America might arguably constitute some kind of breach of a contract inherited from Bank of America, it does not constitute an FDCPA violation.

## IV.  CONCLUSION

We **AFFIRM** the district court's decision to vacate the entry of default against Citigroup and **AFFIRM** the district court's dismissal of Plaintiffs' Amended Complaint.  Further, because Plaintiffs chose to appeal the court's Order of dismissal, rather than to amend as the district court would have allowed, they have waived their right to amend their claims before the district court.

As indicated in our jurisdictional discussion, we remind Plaintiffs that this ruling does not mean that their state-law claims are not viable.  It only means that a federal court will not be hearing these claims.  Plaintiffs are free to assert the claims in state court.